In the

# United States Court of Appeals

## For the Seventh Circuit

No. 16-3611

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

TRAVIS OLIVER,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Northern District of Illinois, Western Division.
No. 3:14-cr-50009-1 — **Philip G. Reinhard**, *Judge*.

ARGUED SEPTEMBER 27, 2017 — DECIDED OCTOBER 17, 2017

Before WOOD, *Chief Judge*, and FLAUM and KANNE, *Circuit Judges*.

FLAUM, *Circuit Judge*. Travis Oliver pled guilty to wire fraud for defrauding investors. The district court sentenced Oliver to fifty-one months in prison followed by three years of supervised release. Oliver challenges that sentence on appeal. He argues that the district court erred by failing to consider unwarranted sentencing disparities, relying on inaccu-

rate information, not calculating the Guidelines range for supervision, and imposing a two-level leadership enhancement. For the reasons stated below, we affirm.

## I. Background

Between 2009 and 2012, Travis Oliver and his co-defendant Todd Smith[1] defrauded investors in Electus Asset Holdings, LLC ("Electus"). Oliver, the sole managing member of Electus, recruited Smith to help solicit investors in the Rockford, Illinois area. At Oliver's direction, Smith mailed flyers to potential investors inviting them to attend retirement planning seminars. At these seminars, Smith told investors that their funds would be invested in Electus, that they could withdraw their funds at any time, that their initial investments would be returned within a year, and that their investments would yield a guaranteed monthly return.

In reality, the investors' money was not invested in Electus. Instead, Oliver used the money to pay personal expenses, including commissions for himself and Smith, and to make interest and principal payments to other Electus investors. He placed the remaining funds in risky, non-guaranteed investments, including Cash Flow Financial ("CFF"), a large Ponzi scheme operated by Alan Watson.

To conceal the fraud, Oliver mailed monthly statements and Internal Revenue Service 1099-INT forms to Electus investors, which falsely claimed that the investments had earned interest. When investors asked to have their investments returned, Oliver and Smith told them that their checks

---

[1] The federal indictment against Smith, who was charged with murder by state authorities, is still pending.

would be issued soon, that their checks had been lost in the mail, or that their money had been invested in a company whose assets were frozen pursuant to an investigation by the Federal Trade Commission. As a result of this scheme, Electus's investors lost a total of $983,654.

On February 11, 2014, a grand jury indicted Oliver on fifteen counts of wire fraud in violation of 18 U.S.C. § 1343 and eight counts of mail fraud in violation of 18 U.S.C. § 1341. On May 31, 2016, Oliver pled guilty to one count of wire fraud. The judge accepted the guilty plea and ordered the probation office to prepare a presentence investigation report ("PSR").

In the PSR, the probation office determined that Oliver's total offense level was twenty-four. Starting with a base offense level of seven, U.S.S.G. § 2B1.1, the probation office imposed the following enhancements: a fourteen-level enhancement because the total loss was greater than $550,000, *id.* § 2B1.1(b)(1)(H); a two-level enhancement because the offense involved ten or more victims, *id.* § 2B1.1(b)(2)(A)(i); a two-level enhancement because Oliver abused his position of trust as Electus's sole managing member to commit the offense, *id.* § 3B1.3; and a two-level enhancement because Oliver acted in a leadership capacity in carrying out the fraudulent scheme, *id.* § 3B1.1(c). The probation office also gave Oliver a three-level reduction for his timely acceptance of responsibility. *Id.* § 3E1.1(a)–(b). With a total offense level of twenty-four and a criminal history category of I, the Sentencing Guidelines suggested a prison term of fifty-one to sixty-three months and a

supervised release term of one to three years. In his sentencing memorandum, Oliver stated that he did not object to the factual determinations or Guidelines calculations in the PSR.[2]

On September 19, 2016, the district court held a sentencing hearing. At the beginning of the hearing, Oliver reiterated to the court that he did not object to the PSR's factual findings or Guidelines calculations. Accordingly, the court adopted the PSR in those respects.

The district court proceeded to hear from several of Oliver's victims. Two victims testified that Oliver caused them severe financial and personal hardship. In addition, the PSR included a statement from a third victim who stated that she had "problems with [her] nerves" and "cried for days." She added: "My husband had heart trouble and this didn't help. He has passed since then."

Next, the court asked the government whether other criminal prosecutions arose from the related Ponzi schemes into which Oliver had invested money. The government informed the court that Watson had been convicted of wire fraud in the Eastern District of Virginia, sentenced to twelve years in prison, and ordered to pay $37 million in restitution.

After hearing from both parties, the district judge told Oliver:

> I just want you to know at the outset that the only redemption—and you're never going to pay these people back, whether you're working

---

[2] Oliver did, however, object to certain conditions of supervised release. Those conditions are not at issue in this appeal.

or whether I sentence you to the Bureau of Prisons and you come out. These persons, many of them are going to be dead, and you've taken some years off their lives just by what your conduct has done and the tragedy and emotional effect it's had on these victims.

The court then considered Oliver's mitigation arguments and addressed each of the statutory sentencing factors under 18 U.S.C. § 3553(a). The district court ultimately imposed a prison term of fifty-one months followed by three years of supervised release, both of which fell within the recommended Guidelines range. With respect to supervised release, the district judge noted that he was "impos[ing] the maximum of three years because of all the reasons [he] just stated" and to "try to get restitution over that period of time." The court ordered Oliver to pay $983,654 in restitution to his victims and declined to order restitution jointly and severally "because there's been no other person found to be responsible."

After announcing Oliver's sentence and the conditions of supervised release, the district judge asked defense counsel whether there was "any argument of yours as to the sentence that I haven't addressed." Defense counsel responded, "Not at this time, Judge. The special conditions I think the court has covered, and in terms of covering the terms of the court's sentence, I think the court has covered that appropriately."

The district court issued its written judgment on September 20, 2016. This appeal followed.

## II. Discussion

On appeal, Oliver argues that the district court procedurally erred by failing to address an unwarranted sentencing

disparity, making unsupported factual determinations, and failing to calculate the Guidelines range for his term of supervised release. He also contends that the district court plainly erred by imposing a two-level leadership enhancement.

## A. Standard of Review

Generally, we review the district court's sentencing procedures de novo and its factual findings for clear error. *See United States v. Pulley*, 601 F.3d 660, 664 (7th Cir. 2010). However, "[m]ore deference is due … where an appellant failed to properly raise a claim below either by waiver or forfeiture." *United States v. Seals*, 813 F.3d 1038, 1044 (7th Cir. 2016). If a defendant "intentionally relinquishes or abandons a known right," the issue is waived and cannot be reviewed on appeal. *Id.* at 1044–45 (quoting *United States v. Walton,* 255 F.3d 437, 441 (7th Cir. 2001)). In contrast, if a defendant merely "fails to raise an argument due to accident or neglect," the argument is forfeited and is reviewed for plain error. *Seals*, 813 F.3d at 1045. "Under plain-error review, the defendant must show that (1) there was error, (2) it was plain rather than subject to reasonable dispute, (3) it affected his substantial rights, and (4) the court should exercise its discretion to correct the error because it seriously affected the fairness, integrity, or public reputation of the judicial proceedings." *Id.*

## B. Procedural Errors

As a threshold matter, the government argues that Oliver waived or, alternatively, forfeited his right to challenge any procedural errors at his sentencing hearing.

To support its waiver argument, the government points to the exchange that occurred between the district court and Oliver's defense counsel at the end of the sentencing hearing.

Specifically, after imposing sentence, the district court asked Oliver's defense counsel if there was "any argument of yours as to the sentence that I haven't addressed." Oliver's defense counsel responded that there was not.

This argument is not persuasive. "Waiver principles must be construed liberally in favor of the defendant." *United States v. Anderson*, 604 F.3d 997, 1002 (7th Cir. 2010). And "[w]here the government cannot proffer any strategic justification for a decision, we can assume forfeiture." *Id.* at 1001–02. Here, the government has not offered any strategic justification as to why Oliver would intentionally abandon his right to challenge procedural errors at his sentencing. Nor can this Court "conceive of any strategic reason" for this decision. *United States v. Jaimes-Jaimes*, 406 F.3d 845, 847–49 (7th Cir. 2005); *see also United States v. Jenkins*, 772 F.3d 1092, 1096 (7th Cir. 2014) (holding that waiver did not occur because we could "conceive of no reason why [the defendant] would have intentionally relinquished an objection certain to result in a lower criminal history score and sentencing range, nor ha[d] the government offered one"). Moreover, Oliver "never actively disclaimed the positions he now raises." *Seals*, 813 F.3d at 1045. Therefore, Oliver did not waive his right to challenge procedural errors in his sentencing proceeding.

However, Oliver did forfeit these arguments by failing to object at the time of sentencing. As a result, the Court reviews for plain error. *See United States v. Chatman*, 805 F.3d 840, 843 (7th Cir. 2015). We now turn to the merits of Oliver's three claims of procedural error.

### 1.  *Unwarranted Sentencing Disparities*

Oliver first argues that the district court procedurally erred by not considering the disparity between his sentence and the sentence of Alan Watson, who operated the CFF Ponzi scheme into which Oliver contributed some of the Electus investors' funds. At Oliver's sentencing hearing, the government informed the district court that Watson was similarly convicted of wire fraud for making false promises to investors and sentenced to twelve years in prison. Oliver points out that while Watson caused approximately thirty-seven times more in dollar losses to investors, Oliver's sentence is just three times shorter. He argues that the district judge erred by failing to consider this purportedly unwarranted sentencing disparity.[3]

When imposing a sentence, district judges must consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). However, "the Sentencing Guidelines are themselves an anti-disparity formula" because the Sentencing Commission considers the need to avoid unwarranted disparities when setting the Guidelines ranges. *United States v. Blagojevich*, 854 F.3d 918, 921 (7th Cir. 2017). Therefore, if "the District Judge correctly calculated and carefully reviewed the Guidelines range, he *necessarily*

---

[3] The government responds that the district court judge did, in fact, consider Watson's sentence by specifically asking the government for information regarding any criminal prosecutions in the related Ponzi schemes and noting that "the court always likes to know what happened in related matters." The Court need not address this argument because Oliver's within-Guidelines sentence necessarily accounted for unwarranted sentencing disparities, as explained *infra*.

gave significant weight and consideration to the need to avoid unwarranted disparities." *Id.* (quoting *Gall v. United States*, 552 U.S. 38, 54 (2007)). In other words, "[a] sentence within a Guideline range 'necessarily' complies with § 3553(a)(6)." *United States v. Bartlett*, 567 F.3d 901, 908 (7th Cir. 2009).

That is precisely what occurred here. The district court correctly calculated and sentenced Oliver within the Guidelines range.[4] Indeed, the district court's fifty-one month sentence was at the very bottom of Oliver's Guidelines calculation. "Thus, the district court judge did not need to say a word about § 3553(a)(6)'s application … to satisfy the procedural requirement that he give that factor 'meaningful consideration.'" *United States v. Reyes-Medina*, 683 F.3d 837, 841 (7th Cir. 2012). Oliver's argument accordingly fails.

### 2. *Factual Determinations*

Next, Oliver argues that the district court procedurally erred by selecting a sentence that was based on clearly erroneous facts.

"[C]onvicted defendants have a due process right to be sentenced on the basis of accurate and reliable information." *United States v. Corona-Gonzalez*, 628 F.3d 336, 343 (7th Cir. 2010) (quoting *United States v. Kovic,* 830 F.2d 680, 684 (7th Cir. 1987)). Thus, a sentencing court commits "a significant procedural error" if it "'select[s] a sentence based on clearly erroneous facts.'" *Corona-Gonzalez*, 628 F.3d at 340 (alteration in original) (emphasis omitted) (quoting *Gall*, 552 U.S. at 51). To

---

[4] Oliver argues that the district court should not have applied a two-level leadership enhancement, but that argument fails for the reasons outlined *infra* in Part II.C.

successfully challenge a sentence on this ground, the defendant "must show both that information before the sentencing court was inaccurate and that the sentencing court relied on the inaccurate information in the sentencing." *Lechner v. Frank*, 341 F.3d 635, 639 (7th Cir. 2003). If the defendant makes such a showing, the defendant has the right to a new sentencing hearing. *See United States v. Jones*, 454 F.3d 642, 652 (7th Cir. 2006).

Oliver argues that his sentence was based on two pieces of inaccurate information. First, Oliver challenges the judge's statement that Oliver's crimes had "taken some years off [people's] lives." Oliver contends that this statement was false because "no one ever presented evidence showing Mr. Oliver's actions shortened anyone's life."

Even if the judge's statement was not literally true, Oliver has not shown that the district court relied on it when fashioning its sentence. There is no reason to think that the comment was intended as a literal statement of fact to support the sentence imposed. Rather, the phrase was nothing more than a figure of speech to underscore the emotional impact of Oliver's conduct on his victims. Immediately before making the challenged statement, the district judge expressed concern that Oliver would not find "redemption" because he was "never going to pay these people back, whether you're working or I sentence you to the Bureau of Prisons and you come out." This suggests that the judge was simply trying to convey that no prison sentence could undo the harm that Oliver caused. Thus, Oliver has not shown that the district court relied on the notion that Oliver actually reduced the lifespan of his victims to determine his sentence.

Second, Oliver argues that the district judge determined that Oliver was solely responsible for the $983,654 in restitution based on his erroneous belief that "there's been no other person found to be responsible." Oliver claims that this belief was inaccurate because Watson shared responsibility for losing the portion of the $983,654 that was invested in CFF. Oliver further argues that there is a risk of double recovery for victims because at least some of the $983,654 loss is part of the $37 million in restitution that Watson was ordered to pay.

This argument goes too far. The government notes, and Oliver does not dispute, that the restitution order in Watson's case did *not* list Oliver, Electus, or any of Oliver's victims. The parties acknowledge, however, that the restitution order in Watson's case included $466,050.60 to be paid to "Bruce H," and that Oliver's investments in Watson's Ponzi scheme were made through Bruce Hongsermeier. Thus, there may be some risk that part of Oliver's $983,654 loss overlaps with the $37 million that Watson was ordered to pay.[5] But that risk is easily addressed. The government suggests, with Oliver's acquiescence, that we modify the restitution order to limit any victim's recovery to the amount of her loss. We agree that this is the appropriate step. *See United States v. Trigg*, 119 F.3d 493, 501 (7th Cir. 1997) (noting that "victims may not recover [through restitution] an amount in excess of their loss").

In sum, Oliver was sentenced based on accurate information, so the district court did not procedurally err in this respect.

---

[5] The district court could not have held Oliver's co-defendant, Smith, jointly and severally liable for the restitution because Smith had not yet been convicted.

### 3. *Supervised Release Guidelines Calculation*

Next, Oliver argues that the district court procedurally erred by imposing a three-year term of supervised release without first calculating the Guidelines range for supervision and considering whether a three-year term was appropriate based on the statutory sentencing factors.

As a preliminary matter, the government argues that Oliver waived his right to challenge the issue because he did not object to the Guidelines calculations in the PSR. This argument misses the point. Oliver is not challenging the Guidelines calculation for his supervised release term on substantive grounds; rather, he is arguing that the district court failed to follow proper *procedure* by not repeating that calculation on the record. A defendant does not waive the procedural requirements of a sentencing hearing simply by failing to object to a PSR. Indeed, when Oliver stated that he had no objections to the PSR at the beginning of the sentencing hearing, he could not have known whether the district court would comply with procedural requirements during the rest of the proceeding. Therefore, Oliver did not waive this claim, and we review for plain error.

Turning to the merits, Oliver relies on this Court's decision in *United States v. Downs*, 784 F.3d 1180 (7th Cir. 2015). In *Downs*, the district court sentenced the defendant to ten years of supervised release even though the Guidelines recommended a supervised release term of only three years. *Id.* at 1181. We held that the district court judge "was required, before deciding on the length of the defendant's term of supervised release, to calculate the guidelines range and assess its appropriateness as a guide to sentencing the defendant, in

light of the sentencing factors in 18 U.S.C. § 3553(a)." *Id.* Because there was no indication that the district court even considered the Guidelines range, we reversed and remanded for resentencing. *Id.* at 1181–82.

*Downs* is distinguishable from this case. Unlike the district court in *Downs*, the district court here expressly referenced the PSR, adopted the PSR's Guideline calculations, imposed a term of supervised release that was within the Guidelines range, and explained its rationale for doing so in light of the § 3553(a) factors. Immediately after going through each of the § 3553(a) factors to reach Oliver's prison sentence, the district judge explained that he was imposing a three-year supervised release term "because of all the reasons [he] just stated" and to ensure that restitution could be recovered during that time.

Oliver seems to argue that, even if a district court expressly adopts the Guideline calculations in the PSR, the failure to separately calculate the Guidelines range for supervised release constitutes reversible error. Neither *Downs* nor other precedent from this Court supports such a rule. Although prison and supervised release are two different forms of punishment, they are both part of a single sentence. *See id.* at 1182; *United States v. Kappes*, 782 F.3d 828, 837 (7th Cir. 2015) ("Any term of supervised release is considered part of the overall sentence."). Accordingly, we have held that "an explicit announcement of the guidelines recommendation" for supervised release, although helpful for purposes of appellate review, is not required. *Anderson*, 604 F.3d at 1003–04 (holding that the district court did not procedurally err even though the judge "never recited [the] guideline range for supervised release during the [sentencing] hearing"). Rather, the critical

inquiry is whether the district court was aware of and understood the Guidelines recommendation for supervised release. *See id.* Where, as here, the district court "impose[s] a within-guidelines term of supervised release" and "express[ly] mentions … the PSR in the earlier part of the hearing," this Court can rest assured that the district court was aware of the Guidelines range. *Id.* at 1004.

For the same reasons, the district court was not required to engage in "a separate comprehensive analysis" of the § 3553(a) factors as they applied to Oliver's term of supervised release after extensively discussing those same factors with respect to Oliver's prison sentence. *See id.* at 1003 ("We have never required such repetition from the district court."); *see also United States v. Bloch*, 825 F.3d 862, 869 (7th Cir. 2016), *reh'g denied* (July 13, 2016) ("[T]he district court was not required to provide two separate explanations, one for the term of imprisonment and one for the term of supervised release."). Instead, "a district court need only provide one overarching explanation and justification—tethered, of course, to the § 3553(a) factors—for why it thinks a criminal sentence comprised of both terms of imprisonment and supervised release is appropriate." *Bloch*, 825 F.3d at 870. The district court did that here.

Therefore, the district court did not err in imposing a three-year term of supervised release.

## C. Leadership Enhancement

Finally, Oliver argues that the district court plainly erred by imposing a two-level enhancement based on Oliver's leadership role in the criminal activity.

The government responds that Oliver waived his right to appeal the application of the two-level leadership enhancement because he stated, both in his sentencing memorandum and at the sentencing hearing, that he had no objections to the PSR Guidelines calculations.

Under our precedent, "this case is a close one." *See Anderson*, 604 F.3d at 1002. This Court has previously held that a defendant waived his right to challenge a Guidelines calculation where defense counsel "had access to the PSR, knew of his right to object, considered objecting to portions of the PSR other than the one he now challenges, and stated on the record that he did not have further objections when asked by the district court." *United States v. Garcia*, 580 F.3d 528, 542 (7th Cir. 2009); *see also, e.g.*, *United States v. Ranjel*, No. 15-3778, 2017 WL 4324980, at *4–*5 (7th Cir. Sept. 29, 2017) (holding that the defendant waived his right to appeal the term of supervised release because he failed to object to the PSR despite "multiple opportunities" to do so).

However, under the same circumstances we have determined that a defendant did not waive, but rather merely forfeited his challenge. *See, e.g.*, *Jaimes-Jaimes*, 406 F.3d at 847–49 (holding that the defendant did not waive his right to appeal an eight-level enhancement even though defense counsel failed to object to the Guidelines calculation in the PSR); *Jenkins*, 772 F.3d at 1096 (holding that the defendant did not waive his right to appeal the inclusion of a conviction in his criminal history calculation even though he failed to object to that portion of the PSR).

Ultimately, we need not answer this question to resolve this case. Even if we assume that Oliver only forfeited (rather

than waived) his challenge to the leadership enhancement, the district court did not commit plain error by applying it.

Under § 3B1.1(c) of the Sentencing Guidelines, the defendant's offense level must be increased by two "[i]f the defendant was an organizer, leader, manager, or supervisor in any criminal activity." U.S.S.G. § 3B1.1(c). "The Guidelines do not define 'organizer,' 'leader,' 'manager,' or 'supervisor,'" but they do list factors a district court should consider. *See United States v. Weaver*, 716 F.3d 439, 442 (7th Cir. 2013). Those factors are: "the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others." U.S.S.G. 3B1.1, cmt. n.4. In the past, this Court has consulted those factors to determine whether the leadership enhancement applies in a given case. *See, e.g., Weaver*, 716 F.3d at 442–43; *United States v. Vaughn*, 722 F.3d 918, 935 (7th Cir. 2013). And we have broadly defined a supervisor or manager as someone who "tells people what to do and determines whether they've done it." *United States v. Figueroa*, 682 F.3d 694, 697 (7th Cir. 2012).

Here, the district court did not plainly err in determining that the leadership enhancement applied. First, Oliver created the fraudulent investment scheme. It is undisputed that Oliver was the sole managing member of Electus. Moreover, as explained in the PSR, all funds were channeled through Oliver, who decided how they would be "invested."

Second, the PSR concluded that "Oliver recruited Smith" to join the operation and solicit investors. *See United States v.*

*Henry*, 813 F.3d 681, 683 (7th Cir. 2016) ("Recruitment [is] a factor supporting an inference of management."). Oliver argues that he did not recruit Smith because Smith learned about Electus from another individual, Bruce Hongsermeier. However, learning about an organization and being asked to join in the operation of an organization are distinct. It makes sense that Smith learned about Electus through a third party, but was later recruited to join the operation by Oliver.

Finally, Oliver exercised control over Smith by directing him to make false representations to investors. *See Figueroa*, 682 F.3d at 697 (defining a "supervisor" or "manager" as someone who "tells people what to do"). Oliver contends that Smith solicited investors on his own. However, both the PSR and plea agreement state that Oliver "directed" Smith to do so. Additionally, Smith sent investors' payment checks—made out to Electus—to Oliver. And when an investor mistakenly made out a check to Smith, he wired the funds to Oliver. This suggests that Smith fell below Oliver in the fraud's hierarchical scheme. *See Weaver*, 716 F.3d at 444 ("[S]ome hierarchy among those involved in the criminal activity must exist to qualify a defendant for an enhancement under § 3B1.1."). Moreover, Oliver and Smith spoke weekly, which indicates "ongoing supervision." *Id.* Lastly, Oliver's control is demonstrated by the fact that Smith received a referral fee.[6]

---

[6] Oliver argues that Smith did not receive a commission. The PSR is somewhat inconsistent on this point. According to the PSR, during his initial meeting with investigators, Smith said that he never received a commission. However, Smith had a second meeting with the investigators just two days later at which he said that he had received a referral fee. Moreover, the plea agreement states that some of the investors' funds were used to pay "undisclosed commissions to … Smith."

*See id.* ("Th[e] exercise of control and authority will usually allow the defendant to impose some … reward … for the underling's execution of the directed task.").

Therefore, the district court did not plainly err in determining that the leadership enhancement applied.

### III. Conclusion

The district court's restitution order shall be modified to clearly forbid any recovery in excess of a victim's loss. In all other respects, we AFFIRM the judgment of the district court.