In the

# United States Court of Appeals

## For the Seventh Circuit

No. 18-1837

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

DANDRE MOODY,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 15-CR-350 — **John J. Tharp, Jr.**, *Judge.*

ARGUED DECEMBER 11, 2018 — DECIDED FEBRUARY 7, 2019

Before WOOD, *Chief Judge*, and RIPPLE and BARRETT, *Circuit Judges*.

BARRETT, *Circuit Judge*. Within two days of helping his codefendants steal more than 100 guns from a train car, Dandre Moody sold 13 of them to anonymous buyers who telephoned him after they "heard about it." He pleaded guilty to possessing a firearm as a felon, 18 U.S.C. § 922(g)(1); possessing a stolen firearm, *id.* § 922(j); and cargo theft, *id.* § 659, for which he was sentenced to 93 months' imprisonment.

Moody now appeals his sentence. He challenges, for the first time, a four-level guideline enhancement under U.S.S.G. § 2K2.1(b)(5) for trafficking firearms to people he knew (or had reason to know) were unlawful users or possessors.[1]

We agree with Moody that the district court plainly erred by imposing this enhancement. Nothing in the record suggests that Moody had reason to believe that his buyers were unlawful gun users or possessors. By finding that Moody had such knowledge, the court plainly crossed the line that separates permissible commonsense inference from impermissible speculation. We therefore vacate the judgment and remand for further sentencing proceedings.

## I.

One night in April 2015, Moody drove a train-theft crew to a railyard on the south side of Chicago. There, while part

---

[1] Moody has abandoned a different argument: that the district court engaged in impermissible double-counting under U.S.S.G. § 2K2.1(b) by applying both the four-level trafficking enhancement and a four-level enhancement for possessing a firearm in connection with another felony. Moody asked to incorporate by reference this argument from a codefendant's brief in an appeal that was not consolidated with this one. We need not address this argument for two reasons. First, as Moody conceded in his briefing, we rejected this double-counting theory from a codefendant's appeal, *United States v. Shelton*, 905 F.3d 1026, 1035 (7th Cir. 2018), and Moody posits no grounds for overruling that decision. Second, because this case was not consolidated with Shelton's, Moody was not permitted to incorporate by reference his codefendant's arguments. *See Albrechtsen v. Bd. Of Regents of Univ. of Wisconsin Sys.*, 309 F.3d 433, 435–36 (7th Cir. 2002) ("[A]ppellate briefs may not incorporate other documents by reference."); *see also Parker v. Franklin Cty. Cmty. Sch. Corp.*, 667 F.3d 910, 924 (7th Cir. 2012) (rejecting defendants' attempt to incorporate by reference arguments in their prior district-court brief).

of the crew broke into a parked train car and stole 111 guns, Moody waited, ready to drive away with any merchandise that the crew might retrieve.

Moody's share of the loot was 13 guns. Within two days, according to his uncontradicted testimony at his change-of-plea hearing, he sold them to different anonymous buyers who phoned him after they had "heard about it." Moody was not asked follow-up questions on the record about the nature of "it," and the presentence investigation report did nothing to further clarify what the callers had heard. Of the crew's stolen guns, 33 were recovered before sentencing—17 at crime scenes. The sentencing record does not, however, tie Moody to any of the recovered guns. Moody pleaded guilty to possessing a gun as a felon, possessing a stolen gun, and cargo theft.

Sentencing followed. The district court began the sentencing hearing by confirming that Moody had reviewed the PSR's guidelines calculation (which included the enhancement at issue here, but not any factual detail on that point) with counsel, had filed no objections, and planned to make none. The court calculated an advisory Guidelines range of 121 to 151 months' imprisonment. In doing so, it applied three enhancements from the 2016 Guidelines Manual, including a four-level enhancement pursuant to 2K2.1(b)(5) because the offense involved trafficking in firearms. The court reasoned that this enhancement applied because Moody had sold his share of stolen guns "literally to anyone who called expressing an interest in getting" them, and the court presumed that at least several of these people would use them in future crimes. The court said that this conduct posed a danger to the

community because "many [of the guns] have been recovered in Chicago, many of them at crime scenes." It continued:

> I know, Mr. Moody, that you don't for a second believe that any of those folks were interested in lawfully possessing a firearm. There is absolutely no question that the people that were seeking to buy those firearms wanted those firearms to support other unlawful activity beyond their possession of the firearms. Whether it was drug trafficking, whether it was violent crime, whether it was burglary, robbery, that's who buys guns that have been stolen off a train.

The court sentenced Moody to a prison term of 93 months, which was below the advisory Guidelines range.

## II.

Moody argues that the district court wrongly applied the firearm-trafficking enhancement under U.S.S.G. § 2K2.1(b)(5). He maintains that the government did not provide sufficient evidence that he had reason to believe that 2 or more of the 13 buyers either were legally barred from firearm possession (by virtue of a prior conviction for, say, a crime of violence like aggravated assault, *see* § 2K2.1 n.13(B) & § 4B1.2(a)(2)), or would use the guns in other crimes. Based on this record, he contends, someone in his shoes could at most reasonably think only that the callers wished to make an unlawful purchase but not that they were otherwise barred from firearm possession or would use the guns unlawfully.

Before tackling the merits of Moody's argument, we must address a threshold issue: the parties' dispute about whether Moody's failure to object in the district court to this

enhancement means that he "waived" or merely "forfeited" this argument. Whether a defendant had reason to know of a gun-buyer's nefarious purpose is the kind of factual question we review for clear error if the issue is preserved. *United States v. Jemison*, 237 F.3d 911, 918 (7th Cir. 2001). But the even more deferential standard of plain-error review applies when an objection has been forfeited, and no review is available when it has been waived. *United States v. Oliver*, 873 F.3d 601, 607 (7th Cir. 2017). An issue is waived when a defendant intentionally relinquishes a known right; it is merely forfeited when a defendant neglects to timely object. *Id.*

Here, the better view is that Moody forfeited rather than waived the objection. "The touchstone of waiver is a knowing and intentional decision." *United States v. Jaimes-Jaimes*, 406 F.3d 845, 848 (7th Cir. 2005). If the government cannot proffer any strategic justification for a defendant's omission, we will presume an inadvertent forfeiture rather than an intentional relinquishment. *Oliver*, 873 F.3d at 607; *cf. United States v. Young*, 908 F.3d 241, 246–47 (7th Cir. 2018). No one has proposed a strategic reason for Moody to have bypassed a challenge to a four-level enhancement. Thus, the claim is forfeited, and we will review the district court's decision for plain-error. *Oliver*, 873 F.3d at 607.

Under the plain-error standard, Moody must show that the error is not subject to reasonable dispute, that it affected his substantial rights, and that it diminished the fairness, integrity, or reputation of the judicial proceedings. *Id.*; *Molina-Martinez v. United States*, 136 S. Ct. 1338, 1343 (2016); Fed. R. Crim. P. 52(b). Although that standard is demanding, Moody meets it.

U.S.S.G. § 2K2.1(b)(5) directs a court to increase a defendant's offense level by four for the "trafficking" of firearms. As relevant here, this means that the defendant "knew or had reason to believe" that, for at least two guns, the recipient intended to use the weapon in a further crime or was already a person prohibited, by federal law on specified grounds, from possessing guns. U.S.S.G. § 2K2.1 n.13(A). A "person prohibited" is narrowly defined as someone "whose possession or receipt of the firearm would be unlawful." *Id.* Such a person "(i) has a *prior* conviction for a crime of violence, a controlled substance offense, or a misdemeanor crime of domestic violence; or (ii) *at the time of the offense was under a criminal justice sentence*, including probation, parole, supervised release, imprisonment, work release, or escape status." *Id.* at n.13(B) (emphasis added). The government bears the burden of proving by a preponderance of the evidence that this enhancement is warranted. *United States v. Johnson*, 743 F.3d 196, 201 (7th Cir. 2014).

Moody attacks as impermissibly speculative the district court's conclusion that he had reason to believe that his buyers were barred from gun possession or that they intended to use the guns in crimes. In his view, the court assumed that the callers had heard about the train theft and were seeking to buy guns that they knew were stolen. And from that premise, the court inferred that the callers planned to use these guns in other crimes, and, further, that Moody had reason to know it. The PSR and sentencing memoranda, meanwhile, offered no substantiation for this chain of inferences.

The government counters that while Moody did not know his buyers' identities, he surely knew that they were in the market for stolen guns. Common sense, the government adds,

would say that few, if any, of these 13 anonymous buyers of stolen guns would be permitted by federal law to possess guns generally.

But the only evidence that the government offered on this point is Moody's remark that he sold his share of the guns to "different people who heard about it." But what "it" refers to is impossible to discern from the record. "It" might refer to the train heist, or "it" might refer to a bunch of guns (which may or may not be stolen) available for an off-the-books sale. If "it" merely refers to a load of guns for sale, then Moody's statement simply establishes that *he* possessed stolen firearms. But that criminal act is already accounted for by his conviction for possessing a stolen firearm and does not justify the enhancement. *See* 18 U.S.C. § 922(g)(1). And the anonymous participants' interest in off-the-books gun sales might have given Moody reason to believe that their *purchases* were unlawful, but not that their *possession* or *use* of the guns is unlawful. As Moody emphasizes, those who purchase guns unlawfully do not necessarily fall into the prohibited category defined by U.S.S.G. § 2K2.1(b)(5). For example, Lori Shelton, a lawful gun-owner identified in a codefendant's sentencing record, bought firearms from the heist. Shelton carried a valid firearm license and intended to give the guns to her adult children once they, too, obtained licenses. The government correctly notes that Shelton's intentional purchase of stolen property was itself a crime in Illinois, *see* 720 ILCS 5/16-1(a)(4), but this did not make her a prohibited person under U.S.S.G. § 2K2.1 n.13(B).

Moody's case thus stands in contrast to those in which the seller knew something more about the buyers than that they were in the market for a gun. *See, e.g., United States v.*

*Rodriguez*, 884 F.3d 679, 679–81 (7th Cir. 2018) (upholding en-
hancement where defendant and recipient *discussed* using
guns unlawfully); *United States v. Jemison*, 237 F.3d 911, 918
(7th Cir. 2001) (reasoning that it would be "naïve" to conclude
that Jemison had no reason to think guns he sold *to a gang*
would be used to commit other felonies; "the public [is] not
blissfully ignorant of the connection between criminal vio-
lence and street gangs"). Indeed, Moody's case also stands in
contrast to that of his codefendants because in their case, the
government introduced evidence that they knew specific
buyers were prohibited persons.[2] His case is more like *United
States v. Green*, 360 F. App'x. 521, 522–25 (5th Cir. 2010) (non-
precedential disposition), in which the Fifth Circuit rejected
the enhancement for a defendant who smuggled five guns to
two people in Mexico. The enhancement was based on the
district court's supposition that guns in Mexico are predomi-
nantly used by drug-trafficking organizations. The Fifth Cir-
cuit held that this supposition was too big a leap. *Id.* at 525.

In short, the government's evidence that Moody sold guns
to "different people who heard about it" is an insufficient ba-
sis for concluding that Moody sold guns to 2 or more people
who satisfied the narrow criteria of U.S.S.G. § 2K2.1 n.13(A).
In concluding otherwise, the district court relied on a series of
inferences that were plainly too speculative to support a

---

[2] We might feel differently about this case if the government had pre-
sented more evidence (e.g., if the government had shown that Moody's
buyers were connected to him and his train heist). But it is not clear from
the record—not even the presentence investigation report or the govern-
ment's sentencing memo—what Moody knew or had reason to know
about who his buyers were or why they wanted guns, beyond his admis-
sion that his callers had "heard about it."

finding by a preponderance of the evidence. We therefore agree with Moody that the enhancement was plainly improper.

In so holding, we are mindful that our precedents allow a district court great leeway to make commonsense inferences. *See, e.g.*, *United States v. Gilmore*, 60 F.3d 392, 393–94 (7th Cir. 1995); *see also United States v. Jemison*, 237 F.3d 911, 918 (7th Cir. 2001). In *Gilmore*, we held that a district court did not err by inferring that the defendant had reason to believe the guns he "lost" would be used unlawfully, even though the only evidence was that one of the guns was found at a crime scene and Gilmore (the original gunowner) did not know the identities of the new owners. 60 F.3d at 394. But in Moody's case, no such inference is available. Although 17 of the crew's 111 firearms were found at crime scenes, no evidence ties any of the guns found at crime scenes to those sold by Moody. Because the inferential leap required by common sense is too great here, the government has not met its burden of proof.

Of course, this error is not reversible simply because it is plain—we must also conclude that it affected Moody's substantial rights and diminished the fairness, integrity, or reputation of the judicial proceedings. The Supreme Court has repeatedly emphasized that when an unpreserved guideline error is plain, it typically affects both fundamental rights and fairness by setting an incorrect range for the probable sentence. *See generally Molina-Martinez v. United States*, 136 S. Ct. 1338 (2016); *Rosales-Mireles v. United States*, 138 S. Ct. 1897 (2018). That is true here. The district court gave no indication that it chose a sentence "irrespective of the Guidelines range." *Molina-Martinez*, 136 S. Ct. at 1346. And without the enhancement, Moody's advisory Guidelines range would drop from

121–151 months to 78–97 months. Because the district court's current 93-month sentence was designed to fall below the range the judge had calculated, we cannot be confident that the court would have been unwilling to go even lower.

None of this is to say that Moody is assured a lighter sentence on remand. Perhaps a revised PSR or other evidence will cure any ambiguity. And even if the gun-trafficking guideline does not apply, the district court may consider whether, as a matter of the sentencing factors under 18 U.S.C. § 3553(a), Moody's blindness to his buyers' identities makes it reasonable to refrain from going any lower. These possibilities are for the district court to consider in the first instance.

### III.

The judgment of the district court is VACATED and REMANDED for further proceedings consistent with this decision.