**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued April 24, 2019
Decided May 2, 2019

**Before**

MICHAEL S. KANNE, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

AMY J. ST. EVE, *Circuit Judge*

No. 18-1683

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee*, | Appeal from the United States District Court for the Northern District of Indiana, South Bend Division. |
| *v.* | No. 3:16CR078-001 |
| SHARON RAMOS, *Defendant-Appellant*. | Jon E. DeGuilio, *Judge*. |

**O R D E R**

A jury found Sharon Ramos guilty of making false entries in government records, converting government money, and wire fraud. When calculating the Sentencing Guidelines range, the district court applied enhancements for abusing a position of trust and obstructing justice. Ramos challenges these enhancements on appeal. Because any error in applying the abuse-of-trust enhancement was harmless, and the obstruction enhancement was warranted, we affirm the judgment.

Ramos worked as a claims representative for the Social Security Administration. Her job was to collect information about social-security recipients and enter it into a computer program that determined, or redetermined, the proper amount for their monthly disability payments. The Administration describes the role as "non-supervisory" and "non-sensitive/low risk."

The Administration employed "extensive security protocol and procedures." It required any entry or change by a claims representative to be supported with verifying documentation. New information might reveal an underpayment of benefits to be repaid to the claimant retroactively. But under its policy of "administrative finality," the Administration prohibited repayment of underpaid benefits for periods more than two years in the past, except in cases of "fraud or similar fault."

A supervisor in Ramos's office explained at trial that a claims representative's work was subject to "extensive" oversight and "systematic" reviews. The Office of Quality Review performed "regular reviews" and "quality reviews … on a systematic basis." Ramos's office also conducted performance reviews of her work three times per year. And the Office of Security and Integrity did "security reviews" on a monthly basis "for a multitude of issues, such as Social Security application cards … [and] any other type of change … that has security protocol and requires verification." A calculation of an underpayment of more than $5,000 required review by a second claims representative, and repayments close to $5,000 could trigger an alert for the representative's supervisor to check them.

After Ramos's supervisor received an alert about a repayment near $5,000, an audit revealed that for years Ramos had been entering false information without supporting documentation. She caused the Administration to disburse approximately $550,000 in improper payments. Ramos, however, did not receive any personal monetary benefit from her offenses; she said she did it to "help claimants."

During the investigation, Ramos confessed in writing that she "knowingly" caused erroneous payments to be issued. At trial, however, she denied that she had ever intentionally made false entries or increased benefits to recipients who she knew were not entitled to them; she said she had confessed under "duress." She added that the confession was "not accurate at all." For example, though she had admitted in the confession that she knew that it went against policy to repay benefits beyond the period of administrative finality, at trial she testified that she was unfamiliar with that term. The jury found Ramos guilty of ten counts of making false entries in government

records, 18 U.S.C. § 2073, two counts of conversion of government money, *id.* § 641, and one count of wire fraud, *id.* § 1343.

Before sentencing, a probation officer prepared a presentence investigation report. She recommended a two-level enhancement for obstruction of justice, U.S.S.G. § 3C1.1, to which Ramos did not object. The government argued that an enhancement for abuse of a position of trust, U.S.S.G. § 3B1.3, also should apply, and it submitted a claims-representative job description in support. The probation officer stood by her original report because the job description classified Ramos's position as "non-supervisory" and "non-sensitive/low-risk," and, the officer said, Ramos was subject to supervision and had limited discretion.

The district court calculated a guidelines range of 63 to 78 months in prison, based on an offense level of 25 and a criminal history category of II. It applied the abuse-of-trust enhancement because the job description states that most duties were performed without supervision, and thus a claims representative had to use "judgment and discretion" to authorize entitlements. It also applied an obstruction-of-justice enhancement because, it concluded, Ramos had perjured herself at trial when she denied making false entries and issuing improper payments. On its own initiative, the court rejected a possible argument that Ramos's denials resulted from short-term memory problems caused by her numerous traumatic brain injuries described in the presentence investigation report. After discussing the 18 U.S.C. § 3553(a) factors, the court added that it would have imposed the same sentence even if the guidelines did not consider Ramos's position as one of trust:

> In your position, you had the ability to make entries that would authorize payments to claimants, and you were trusted to do so honestly and in a manner consistent with the rules. Through your conduct, you violated the trust that the Social Security Administration placed in you, and in turn, the trust that the public places in its government to handle its funds responsibly. If the enhancement did not apply, then the guidelines would fail to account for that factor, which the court would consider in reaching this same sentence.

The court sentenced Ramos below the guidelines range to 46 months in prison.

On appeal, Ramos challenges the application of the abuse-of-trust and obstruction enhancements. We generally review a district court's interpretation of the

Guidelines *de novo* and its factual findings for clear error. *United States v. DeMarco*, 784 F.3d 388, 396 (7th Cir. 2015).

Ramos first argues that the district court clearly erred in finding that she had occupied a position of trust by relying exclusively on the job description and ignoring the trial testimony, which, she says, showed that she did not have the required discretion in her duties. She contends that myriad policies, procedures, and security protocols constrained her discretion and that her superiors would have quickly detected the improper payments if not for their negligent supervision.

Ramos might be right that the district court erred in finding that Ramos occupied a position of trust and applying the enhancement. A position of trust is "characterized by professional or managerial discretion (i.e., substantial discretionary judgment that is ordinarily given considerable deference)." U.S.S.G. § 3B1.3 application n.1. People in those positions "ordinarily are subject to significantly less supervision than employees whose responsibilities are primarily non-discretionary in nature." *Id.* Ramos's job was "non-supervisory" and "non-sensitive/low risk," and she was supposed to undergo comprehensive oversight and reviews. True, Ramos's work went largely unchecked, but lax supervision does not establish that she had discretion vis-à-vis her position. *See United States v. Fuchs*, 635 F.3d 929, 935 (7th Cir. 2011); *United States v. Tiojanco*, 286 F.3d 1019, 1021 (7th Cir. 2002). We have emphasized that when a defendant's work is subject to independent verification—even if that verification does not always occur— she does not occupy a position of trust. *Fuchs*, 635 F.3d at 937. Here, Ramos's supervisor received alerts for suspicious payments, and these alerts were just a part of a larger, extensive review system.

The district court relied too heavily on generalities about Ramos's work gleaned from the job description instead of making a more "case-specific" inquiry about what her job entailed. *Id*. Although the job description states that most of the activities were "handled without supervisory assistance," the undisputed trial testimony showed that Ramos had no discretion to input any information affecting disbursements without proper verifying documentation and detailed the review system designed to monitor her actions. The abuse-of-trust enhancement is appropriate when the defendant's decision-making is granted "considerable deference precisely because *it cannot be dictated entirely by, or monitored against, established protocol.*" *Tiojanco*, 286 F.3d at 1021 (emphasis added). There is no evidence that Ramos had a substantial decision-making function; her role was, essentially, data entry.

But we agree with the government that any error in applying the abuse-of-trust enhancement was harmless. When a district court unambiguously explains, with specific detail, that it would have imposed the same sentence even it was incorrect about the applicability of an enhancement, remand is pointless. *United States v. Salgado*, 917 F.3d 966, 969–70 (7th Cir. 2019). Here, the district court explained that it would have sentenced Ramos as if the enhancement applied, even if it did not, because Ramos used her position to squander public funds. Ramos responds that this reasoning contravenes the policy expressed in § 3B.1.3, but "[j]udges may disagree with the Guidelines based on their own penal theory," including analyzing the facts of a case differently under § 3553(a) than when considering an enhancement. *See United States v. Hatch*, 909 F.3d 872, 875–76 (7th Cir. 2018) (citing, *inter alia*, *Spears v. United States*, 555 U.S. 261, 265–66 (2009); *United States v. Corner*, 598 F.3d 411, 415 (7th Cir. 2010) (en banc)). The judge permissibly considered the nature of Ramos's offense under § 3553(a)(1), and his explanation for imposing the same sentence even without the abuse-of-trust enhancement was reasonable and unambiguous. *See id.* at 875; *Corner*, 598 F.3d at 415. Even without the enhancement, Ramos's 46-month sentence still would be below the applicable guidelines range of 51 to 63 months based on an offense level of 23 and criminal history category of II.

Regarding the obstruction-of-justice enhancement, we address as a preliminary matter whether Ramos has waived her argument. She at least forfeited it by failing to object to the enhancement, which still allows for plain-error review. *See United States v. Johnson*, 874 F.3d 990, 1002 (7th Cir. 2017). Waiver, however, requires a "knowing and intentional decision" to forego a right and thus forecloses appellate review. *United States v. Moody*, 915 F.3d 425, 429 (7th Cir. 2019) (quoting *United States v. Jaimes-Jaimes*, 406 F.3d 845, 848 (7th Cir. 2005)). We have previously acknowledged that our cases are inconsistent as to whether a defendant's failure to object to the presentence investigation report's application of an enhancement constitutes waiver or forfeiture. *See United States v. Shelton*, 905 F.3d 1026, 1037 n.7 (7th Cir. 2018) (comparing *United States v. Oliver*, 873 F.3d 601, 610 (7th Cir. 2017) (finding forfeiture) with *United States v. Gumila*, 879 F.3d 831, 837–38 (7th Cir. 2018) (finding waiver)). Here, the government has not argued waiver nor proposed a strategic reason for Ramos to have bypassed a challenge to the obstruction enhancement. *See Moody*, 915 F.3d at 429; *United States v. Barnes*, 883 F.3d 955, 957 (7th Cir. 2018). Moreover, because the government asserted that Ramos merely forfeited her challenge and responded on the merits, it may have waived any waiver. *See Hamer v. Neighborhood Hous. Servs. Of Chicago*, 897 F.3d 835, 840 (7th Cir. 2018); *United States v. Whitlow*, 740 F.3d 433, 439 (7th Cir. 2014).

We need not resolve these questions, however, because even if Ramos did not waive her challenge, the district court did not err in applying the obstruction-of-justice enhancement. Ramos argues that the district court erroneously relied only on her general denials of guilt, which cannot serve as the basis for this enhancement. It applies when a defendant willfully provides false testimony on a material matter. *See United States v. Stenson*, 741 F.3d 827, 831 (7th Cir. 2014). As described in the presentence investigation report, at trial Ramos contradicted her earlier confession that she had knowingly entered false information into the Administration's records in order to disperse money to which the recipients were not entitled. And she also denied knowledge of the policies prohibiting her actions, despite her confession to the contrary. Therefore, Ramos lied about specific facts that she had previously admitted and that were corroborated by other evidence. Her false statements were material because they concerned information "that, if believed, would tend to influence or affect the issue under determination," i.e., Ramos's guilt and the reliability of her confession. *See United States v. Chychula*, 757 F.3d 615, 621 (7th Cir. 2014) (internal quotation marks and citations omitted). The district judge adopted the presentence report, which supplied the relevant details of Ramos's perjurious testimony, and thus he adequately supported the application of the obstruction enhancement. *See Chychula*, 757 F.3d at 621; *United States v. Long*, 639 F.3d 293, 300 (7th Cir. 2011).

But Ramos contends that her denials were not willful because they resulted from short-term memory problems caused by her numerous traumatic brain injuries. Although false testimony that is a consequence of faulty memory cannot support an obstruction enhancement, *Chychula*, 757 F.3d at 619, here, the district court reasonably explained that it did not believe that Ramos's denial of conduct that occurred over a period of years was the result of *short-term* memory problems. This rationale supports a finding of willfulness. *See United States v. Bryant*, 557 F.3d 489, 501 (7th Cir. 2009). Further, Ramos did not testify that she could not remember making false entries, issuing improper payments, and confessing. Instead, she flatly denied doing so, contradicting other witnesses and evidence. Moreover, Ramos testified that she had confessed under duress, not because of short-term memory loss—she denied facts that she now claims she could not recall. *See United States v. White*, 240 F.3d 656, 661 (7th Cir. 2001).

AFFIRMED