*United States v. Jennings*

**UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**

**SUMMARY ORDER**

*Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this court's Local Rule 32.1.1. When citing a summary order in a document filed with this court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.*

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 6th day of April, two thousand twenty-three.

PRESENT:    Reena Raggi,
            Richard C. Wesley,
            Steven J. Menashi,
                 *Circuit Judges.*

———————————————————————————

UNITED STATES OF AMERICA,

         *Appellee,*

    v.                                              No. 22-220

DERRICK JENNINGS,

         *Defendant-Appellant.*\*

———————————————————————————

---

\*  The Clerk of Court is directed to amend the caption as set forth above.

*For Appellee*:  ANDREW WENZEL, Assistant United States Attorney (Amy Busa, Assistant United States Attorney, *on the brief*), *for* Breon Peace, United States Attorney for the Eastern District of New York, Brooklyn, NY.

*For Defendant-Appellant*:  ALLEGRA NOONAN (Noam Biale, *on the brief*), Sher Tremonte LLP, New York, NY.

Appeal from a judgment of the United States District Court for the Eastern District of New York (Azrack, J.).

Upon due consideration, it is hereby **ORDERED**, **ADJUDGED**, and **DECREED** that the judgment of the district court of January 24, 2022, is **AFFIRMED**.

Derrick Jennings pleaded guilty to conspiracy to violate and a substantive violation of 18 U.S.C. § 922(a)(1)(A), which makes it "unlawful for any person except a licensed importer, licensed manufacturer, or licensed dealer, to engage in the business of importing, manufacturing, or dealing in firearms, or in the course of such business to ship, transport, or receive any firearm in interstate or foreign commerce." The district court sentenced Jennings to two concurrent sentences of 36 months each.[1] On appeal, Jennings argues that the sentence was procedurally unreasonable because the district court improperly applied the four-level firearms trafficking enhancement set forth in U.S. Sentencing Guidelines § 2K2.1(b)(5) to its

---

[1] The district court also sentenced Jennings to a term of supervised release for three years on each count.

2

Guidelines calculation.[2] Jennings contends that the government has not proven by a preponderance of the evidence that the enhancement applies.

We conclude that the district court properly applied the sentencing enhancement. We assume the parties' familiarity with the underlying facts and procedural history.

**I**

On four separate occasions between January 27, 2018, and May 4, 2018, Jennings and a co-defendant—DeShawn Walker—illegally sold firearms to a confidential informant ("CI") on Long Island. Across these four transactions, Jennings and Walker sold sixteen firearms, seven of which were of the same make and model. During the first transaction on January 27, 2018, Jennings and Walker sold three firearms to the CI—one of which had an obliterated serial number. During that transaction, the CI said that he was buying the guns for a woman and that they wanted the guns "so we can do like a sweatshop, like a big market … small … you know what I'm saying." J. App'x 59-60. Jennings wore gloves during the transaction and wiped the guns before placing them in the CI's bag.

---

[2] Relying on the Presentence Investigation Report, the district court calculated Jennings's total offense level as 21. Because the calculations placed Jennings in Criminal History Category IV (due to certain marijuana convictions), the district court determined that the proper Guidelines range for Jennings was 57 to 71 months. Nevertheless, the district court took into account—pursuant to 18 U.S.C. § 3553(a)—the potential for an unwarranted sentencing disparity with Jennings's co-defendant DeShawn Walker. The Probation Department had calculated Walker's Guidelines range at 41 to 51 months, and it recommended a sentence of 41 months for him; Walker's range was significantly lower than Jennings's range because of Jennings's prior marijuana convictions. The district court determined that 41 months was appropriate for Jennings, too. Because Jennings had been in custody during the COVID-19 pandemic, the district court decided to sentence him to two concurrent 36-month terms. Still, the application of the sentencing enhancement was not harmless because Walker's Guidelines range—which played a significant role in the district court's determination of Jennings's sentence—also included the enhancement.

3

## II

"This Court reviews a district court's application of the [Sentencing] Guidelines *de novo*, while factual determinations underlying a district court's Guidelines calculation are reviewed for clear error." *United States v. Cramer*, 777 F.3d 597, 601 (2d Cir. 2015). "A district court satisfies its obligation to make the requisite specific factual findings when it explicitly adopts the factual findings set forth in the presentence report." *United States v. Molina*, 356 F.3d 269, 275 (2d Cir. 2004). The district court must "use the preponderance of the evidence standard … in finding facts relevant to sentencing for Guidelines calculation purposes." *United States v. Salazar*, 489 F.3d 555, 558 (2d Cir. 2007).

The U.S. Sentencing Guidelines Manual recommends a four-level enhancement to a defendant's total offense level "[i]f the defendant engaged in the trafficking of firearms." U.S.S.G. § 2K2.1(b)(5). Application note 13 to that section provides that § 2K2.1(b)(5) applies if the defendant:

> **(i)** transported, transferred, or otherwise disposed of two or more firearms to another individual, or received two or more firearms with the intent to transport, transfer, or otherwise dispose of firearms to another individual; and

> **(ii)** knew or had reason to believe that such conduct would result in the transport, transfer, or disposal of a firearm to an individual—

>> **(I)** whose possession or receipt of the firearm would be unlawful; or

>> **(II)** who intended to use or dispose of the firearm unlawfully.

U.S.S.G. § 2K2.1 application note 13(A). The application note explains that an "[i]ndividual whose possession or receipt of the firearm would be unlawful" is "an individual who (i) has a prior conviction for a crime of violence, a controlled substance offense, or a misdemeanor crime of domestic violence; or (ii) at the time of the offense was under a criminal justice sentence, including probation, parole,

4

supervised release, imprisonment, work release, or escape status." U.S.S.G. § 2K2.1 application note 13(B). The government concedes that Jennings did not know or have reason to believe that the CI was "an individual whose possession or receipt of the firearm would be unlawful." Appellee's Br. 20 n.3. For that reason, the government was required to prove that Jennings knew or had reason to believe that the CI intended to use or dispose of a firearm unlawfully.

Jennings argues that he did not know or have reason to believe that his illegal sale of sixteen firearms would result in such use or disposal of a firearm. According to Jennings, the evidence demonstrated only that he knew his sale of firearms to the CI was illegal.

We disagree. A preponderance of the evidence supports the conclusion that Jennings had reason to believe that the CI intended to use or dispose of a firearm unlawfully. The CI told Jennings that the CI and an associate planned to operate a market for the firearms. The fact that the CI purchased sixteen firearms—including seven that were the same make and model—further supports the inference that the CI was planning to resell the firearms. Given the discreet nature of the transactions by which the CI was obtaining the firearms, Jennings had reason to believe that the guns were headed to such a market. One of the firearms had a plainly obliterated serial number,[3] and there is video evidence of Jennings looking at the firearms during the sale. Federal law provides that "[i]t shall be unlawful for any person knowingly to transport ... in interstate or foreign commerce, any

---

[3] The unlawful use or disposal of even just one firearm is enough to apply U.S.S.G. § 2K2.1(b)(5), so long as the firearm was part of the transfer of two or more firearms to another individual. Application note 13(A) sets up a two-part inquiry. First, the defendant must have "transferred ... *two or more firearms* to another individual." U.S.S.G. § 2K2.1 application note 13(A)(i) (emphasis added). Second, the defendant must have known "or had reason to believe that such conduct would result in the ... transfer ... of *a firearm* to an individual ... who intended to use or dispose of *the firearm* unlawfully." U.S.S.G. § 2K2.1 application note 13(A)(ii)(II) (emphasis added). At step two of the inquiry, only one firearm is required.

firearm which has had the importer's or manufacturer's serial number ... obliterated." 18 U.S.C. § 922(k). Moreover, Jennings wore gloves and made sure to wipe down the guns during the January 27 transaction, evincing some concern about the buyer's intended conduct with the guns.

Jennings cites an out-of-circuit case—*United States v. Moody*, 915 F.3d 425 (7th Cir. 2019)—for the proposition that even if he "had reason to know the *sale* of these firearms was unlawful, ... that does not automatically translate into knowledge that the purchaser would use the firearms for unlawful purposes." Appellant's Br. 21. But the district court's application of the sentencing enhancement in *Moody* involved a chain of speculative inferences unsupported by the evidence in the record. In that case, the defendant sold stolen guns to different anonymous buyers without any indication of what the buyers intended to do with the firearms. *See* 915 F.3d at 427-28. The Seventh Circuit explained that "the anonymous participants' interest in off-the-books gun sales might have given Moody reason to believe that their *purchases* were unlawful, but not that their *possession* or *use* of the guns is unlawful." *Id.* at 430. The court noted that "Moody's case thus stands in contrast to those in which the seller knew something more about the buyers than that they were in the market for a gun." *Id.*

In this case, by contrast, the district court's decision to apply the sentencing enhancement was supported by evidence of a series of sales to a single, known buyer who specifically represented to Jennings that he intended to set up a market for the guns. *Cf. United States v. Mena*, 342 F. App'x 656, 658 (2d Cir. 2009) (applying the sentencing enhancement under U.S.S.G. § 2K2.1(b)(5) when the defendant "twice delivered guns in a plastic bag in exchange for cash on a street in Manhattan"). *Moody* is inapposite.

A preponderance of the evidence supports the enhancement of Jennings' sentence under U.S.S.G. § 2K2.1(b)(5). For this reason, the district court's application of the sentencing enhancement was proper.

*      *      *

We have considered Jennings' remaining arguments, which we conclude are without merit. For the foregoing reasons, we affirm the judgment of the district court.

FOR THE COURT:

Catherine O'Hagan Wolfe, Clerk of Court