In the

# United States Court of Appeals

## For the Seventh Circuit

No. 09-3993

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

JUAN A. CORONA-GONZALEZ,
also known as JUAN R. RAMIREZ,

*Defendant-Appellant*.

Appeal from the United States District Court
for the Southern District of Indiana, Indianapolis Division.
No. 1:08-cr-00034-DFH-KPF-1—**David F. Hamilton**, *Judge*.

ARGUED OCTOBER 20, 2010—DECIDED DECEMBER 2, 2010

Before FLAUM, RIPPLE and EVANS, *Circuit Judges*.

RIPPLE, *Circuit Judge*. Juan Corona-Gonzalez seeks review of a sentence imposed by the United States District Court for the Southern District of Indiana. A jury found Mr. Corona-Gonzalez guilty of possession with intent to distribute, and distribution of, 500 grams or more of a mixture containing a detectable amount of methamphetamine and possession of a firearm in furtherance of a drug trafficking crime. The district court sentenced him

to 240 months' imprisonment on each of Counts I and II, to run concurrently, and 60 months' imprisonment on Count III, to be served consecutively, for a total of 300 months' imprisonment. The court also imposed a term of five years of supervised release. Because the district court misapprehended a significant aspect of Mr. Corona-Gonzalez's record at the time it imposed the sentence, we must reverse the judgment of the district court and remand the case to permit the district court to determine whether, without that misapprehension, it would have imposed a different sentence.[1]

# I

# BACKGROUND

On February 13, 2008, Mr. Corona-Gonzalez was arrested during a DEA investigation in Indianapolis, Indiana, for allegedly delivering a substance containing methamphetamine to a confidential informant in a Wal-Mart Supercenter parking lot. He was charged with knowingly possessing with intent to distribute, and distributing, 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine (Counts I and II), in violation of 21 U.S.C. § 841(a)(1), and knowingly possessing a firearm during and in furtherance of a drug trafficking offense (Count III), in

---

[1] The jurisdiction of the district court was based on 18 U.S.C. § 3231. We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742.

violation of 18 U.S.C. § 924(c). A jury convicted him of all three counts.

The presentence investigation report ("PSR") contained the advisory sentencing guidelines calculations, which neither party contests. It also contained information regarding the circumstances under which Mr. Corona-Gonzalez, who was born in Mexico, came to the United States with his family in 1998. Mr. Corona-Gonzalez entered this Country, with his mother and siblings, pursuant to a lawfully issued visa to join his father, who already resided here. In 2002, Mr. Corona-Gonzalez's mother and siblings returned voluntarily to Mexico, after his father was removed from this Country as a result of a drug conviction. Mr. Corona-Gonzalez, whose visa had expired, remained in the United States illegally.

The PSR also included Mr. Corona-Gonzalez's five previous misdemeanor convictions. These convictions, which consisted of four traffic offenses and one disorderly conduct offense, had occurred from 2001-2002.

At the sentencing hearing, the district court inquired whether the defense had any objections to the PSR. Defense counsel replied that he had reviewed the report with Mr. Corona-Gonzalez and wished to clarify the nature of the misdemeanor convictions and the sentences imposed. The district court agreed with the defense that the point of contention—whether probation had been imposed—would have no effect on the guidelines calculation. Noting that it had received a sentencing memorandum from the defense, the court then proceeded to approve the sentencing guidelines calcula-

tion contained in the PSR. The court accepted a correction to the defense's sentencing memorandum with respect to the age of Mr. Corona-Gonzalez's child and then heard argument from defense counsel. After permitting Mr. Corona-Gonzalez to address the court, it heard argument from the Government's counsel. The court then announced the sentence that it was prepared to impose, followed by an explanation:

> This is a case—by way of explanation—in which the Court finds that the guidelines provide a sound and reasonable basis for imposing the sentence to accomplish the purposes of section 3553(a)(2).

> Looking first at the nature and circumstances of the offense here. I, frankly, am inclined to agree with the government. What we have here are lots of aggravating circumstances and very little by way of mitigation.

> Mr. Corona-Gonzales, you had already been deported from this country before. You returned and were dealing methamphetamine, the most addictive and destructive drug and distribution in the United States. You were doing so while armed and that is just a very dangerous, completely unacceptable combination, for which Congress has proscribed severe penalties.

> There is some debate about some other drugs and whether the guidelines are excessive. I don't have any concerns with respect to methamphet-

amine as dangerous and as addictive as it is. Those guidelines seem to me quite reasonable in terms of protecting the public and reflecting the seriousness of the offense.

When I look at you as an individual, your history and characteristics, what I see is somebody—as I mentioned—deported before and returned in order to deal drugs; somebody who has consistently had other sorts of legal troubles. If the criminal history were more serious that [sic] it is, the sentence would have been significantly higher even within the category III guideline range. But I've tried to account for the defense argument that these were all essentially traffic offenses by sentencing close to the bottom of the guideline range.

I have no doubt that the sentence is going to be imposing a burden on your family. That is not a consequence of the sentence. It is a consequence of your crime.

Your lawyer has correctly pointed out that you were not a master mind in this case. But I also don't think it's appropriate to discount your role any further. You were playing essential roles in helping to distribute this methamphetamine and you are appropriately going to be punished very severely for this, a total of 25 years in prison followed by another deportation.

I think that sentence, for those reasons, is going to be consistent with section 3553(a) and it's con-

sistent with the advisory guidelines, a severe punishment for a very serious crime.

Sent. Tr. at 13-14.[2]

At no point during the hearing did either party object to these statements as inconsistent with the facts previously established in the record.[3] However, Mr. Corona-Gonzalez asserts, and the Government concedes, that the record contains no reference to a previous removal or an illegal reentry for the purposes of trafficking in drugs. Instead, the record supports Mr. Corona-Gonzalez's assertion that, although he overstayed his visa, he has remained in the United States since his initial entry with his family in 1998.

---

[2] The district court may have confused Mr. Corona-Gonzalez's history with that of his father, whose removal from this Country as the result of a drug conviction in 2002, was recounted in the PSR.

[3] Notably, the sentencing proceeding, in all other respects reflects the careful, conscientious and reflective efforts of the district court. Had trial defense counsel informed the district court of its misapprehension, corrective steps could have been taken immediately, and this appeal, and subsequent proceedings in the district court, could have been avoided. Although primary responsibility for bringing this misapprehension to the attention of the district court was certainly defense counsel's, counsel for Government, with a duty of candor to the court and an obligation to ensure the integrity of the record, also bears some responsibility.

## II

## DISCUSSION

Mr. Corona-Gonzalez submits that the district court committed a significant procedural error, amounting to plain error, when it sentenced him while under a misapprehension as to the circumstances surrounding his presence in the United States.

In Mr. Corona-Gonzalez's view, the district court's repeated references to a previous removal and return to the United States during the sentencing hearing demonstrates that this mistake of fact significantly impacted the court's decision and may have ultimately affected the length of his sentence.

A district court commits a significant procedural error in sentencing when it "fail[s] to calculate (or improperly calculat[es]) the Guidelines range, treat[s] the Guidelines as mandatory, fail[s] to consider the § 3553(a) factors, *select[s] a sentence based on clearly erroneous facts*, or fail[s] to adequately explain the chosen sentence." *Gall v. United States*, 552 U.S. 38, 51 (2007) (emphasis added). Usually, we review procedural errors under a non-deferential standard. *See, e.g.*, *United States v. Rodriguez-Alvarez*, 425 F.3d 1041, 1046 (7th Cir. 2005) (noting that because the defendant based his argument on procedural errors, the court should review his sentence under a non-deferential standard). However, because Mr. Corona-Gonzalez did not object to the alleged procedural deficiency at the time of sentencing, we review for plain error. *See, e.g.*, *United States v. Simpson*, 479 F.3d 492, 496 (7th Cir. 2007).

On plain error review, we may reverse the determination of the district court only when we conclude that: "(1) [an] error occurred; (2) the error was 'plain'; (3) and the error affected the defendant's substantial rights." *Id.*; *see also United States v. Olano*, 507 U.S. 725, 731-36 (1993). If these criteria are met, we may reverse, in an exercise of discretion, if we determine that the error "seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings." *Olano*, 507 U.S. at 732 (internal quotation marks omitted); *see also Simpson*, 479 F.3d at 502.

There is no question that a procedural error occurred during Mr. Corona-Gonzalez's sentencing hearing. The Government concedes that there is nothing in the record to support the district court's statements at the sentencing hearing regarding the previous removal of Mr. Corona-Gonzalez. Both the trial record and the PSR indicate that Mr. Corona-Gonzalez is an illegal alien who came to the United States with his family in 1998 under a temporary visa and that he remained in this Country through the time of his arrest in February 2008. Furthermore, neither side disputes that the error was "plain"; the only mention of the previous removal of Mr. Corona-Gonzalez anywhere in the record was by the court at sentencing. *See, e.g.*, *United States v. Williams*, 552 F.3d 592, 593 (7th Cir. 2009) (explaining that an error is "plain" if it is "clear or obvious").

We turn now to the question of whether the plain error affected Mr. Corona-Gonzalez's substantial rights. In the context of other procedural errors, we have recognized that, in the ordinary case, a defendant shoulders the

burden of demonstrating that the error resulted in preju-
dice to him. *See, e.g., United States v. Luepke*, 495 F.3d
443, 450-51 (7th Cir. 2007). We see no reason why this
rule should not apply when the issue is whether a district
court relied on a clearly erroneous fact at sentencing.
Indeed, we have stated that, in the plain error context,
we shall reverse when it is "necessary to avoid a miscar-
riage of justice." *United States v. Raney*, 342 F.3d 551,
559 (7th Cir. 2003) (noting that even if evidence were
improperly admitted at a jury trial, there is no miscar-
riage of justice if the defendant's guilt was so clear that
he would have been convicted anyway). Therefore, we
must determine whether the district court's repeated
references to an erroneous fact in imposing Mr. Corona-
Gonzalez's sentence is not only "palpably wrong," but
also likely to "have resulted in a different sentence."
*United States v. Flores-Sandoval*, 94 F.3d 346, 351 (7th Cir.
1996) (internal quotation marks omitted); *see also United
States v. D'Iguillont*, 979 F.2d 612, 614 (7th Cir. 1992)
(internal quotation marks omitted).

Having studied the record and listened to the argu-
ments of counsel, we are left with the firm belief
that there is a substantial chance that the district
court's misapprehension played a significant role in the
adjudication of the defendant's sentence. Our reason
for this belief is simple: The district court tells us so in
the sentencing transcript. In stating its reasons for the
sentence it imposed, the court refers to the defendant's
supposed prior removal and reentry into the United
States not once, but three times. In fact, in stating the
reasons for imposing the chosen sentence, the very first

factor the court addressed was the supposed removal and reentry:

> Mr. Corona-Gonzales, you had already been deported from this country before. You returned and were dealing methamphetamine, the most addictive and destructive drug and distribution in the United States. You were doing so while armed and that is just a very dangerous, completely unacceptable combination, for which Congress has proscribed severe penalties.
>
> . . . .
>
> When I look at you as an individual, your history and characteristics, what I see is somebody—as I mentioned—deported before and returned in order to deal drugs; somebody who has consistently had other sorts of legal troubles. If the criminal history were more serious that [sic] it is, the sentence would have been significantly higher even within the category III guideline range. But I've tried to account for the defense argument that these were all essentially traffic offenses by sentencing close to the bottom of the guideline range.

Sent. Tr. at 13-14.

As the above passage demonstrates, after referring to the dangerousness of the particular drug involved in the offenses (methamphetamine), the court returns once again to the supposed reentry after removal and this time compounds the previous misapprehension by

stating that Mr. Corona-Gonzalez had reentered the Country after removal "in order to deal drugs." Sent. Tr. at 13.

Later, in justifying what the court termed "a severe punishment for a very serious crime," *id.* at 14, the court explicitly noted that the present sentence would be followed by "*another* deportation," *id.* (emphasis added).

Context plays a crucial role in evaluating the degree of influence that an unsupported fact has had on a district court's sentencing decision. Therefore, decisions assessing different sentencing situations have limited utility in our assessment of *this* record. Nevertheless, analogous situations can provide a helpful cross-light to our estimation of the degree of prejudice incurred by the defendant before us. Recently, in *United States v. González-Castillo*, 562 F.3d 80, 81-82 (1st Cir. 2009), the Court of Appeals for the First Circuit encountered a situation in which the sentencing court had been under the misapprehension that the defendant, who was being sentenced for illegal reentry into the United States, had committed previously the same crime less than two years before. Emphasizing the defendant's multiple illegal entries, the sentencing court identified deterrence as a "salient factor" in its decision to sentence the defendant at the high end of the applicable guidelines range. *Id.* at 81 (internal quotation marks omitted). Here, although the district court was not dealing with an earlier commission of the same crime, the court was under the significant misapprehension that the defendant, after an earlier removal, had entered the

United States in violation of the law with the intent to commit drug trafficking offenses in this Country. This sequence of events no doubt would raise in the mind of a conscientious district court a suggestion similar to that in *González-Castillo*—that the defendant had evinced a willingness to take substantial risks in violation of the law. Likewise, in *United States v. Wilson*, 614 F.3d 219, 222 (6th Cir. 2010), the Court of Appeals for the Sixth Circuit confronted a set of circumstances in which the district court, in deciding upon an appropriate sentence, had mischaracterized the nature of the defendant's offense. The Sixth Circuit held that a factual misapprehension that affects a district court's estimation of a defendant's respect for the law can be an "important factor" in the imposition of a sentence. *Id.* at 224.

In assessing the sentencing transcript in this case, we consider those factors that the judge deemed important or salient in reaching his decision. We must conclude on the record before us that the district court, although certainly very cognizant of the need to protect the public and promote deterrence, nevertheless gave significant weight to its misapprehension of the defendant's removal and reentry in order to commit drug trafficking offenses. Therefore, it simply is "not improbable that the trial judge was influenced by improper factors in imposing sentence." *Rizzo v. United States*, 821 F.2d 1271, 1274 (7th Cir. 1987) (internal quotation marks omitted); *see also United States v. Barnes*, 907 F.2d 693, 696 (7th Cir. 1990) (recognizing that it is difficult to discern what factors district judges rely on during sentencing); *United States v. Gomer*, 764 F.2d 1221, 1223 (7th Cir. 1985) (stating that a

defendant's entitlement to relief is not predicated on his ability to show that the sentencing judge explicitly relied on an improper factor).

There is a distinct possibility that the district court's reliance on the nonexistent fact that Mr. Corona-Gonzalez previously had been removed and then reentered the United States to deal drugs affected the district court's sentencing assessment. We therefore must conclude that allowing the present sentence to stand without a reassessment would affect the "fairness, integrity or public reputation of [the] proceedings." *Olano*, 507 U.S. at 732 (internal quotation marks omitted). It is established firmly that "convicted defendants have a due process right to be sentenced on the basis of accurate and reliable information." *United States v. Kovic*, 830 F.2d 680, 684 (7th Cir. 1987); *see also United States v. Tucker*, 404 U.S. 443, 447 (1972); *Townsend v. Burke*, 334 U.S. 736, 740-41 (1948). If the district court did indeed sentence Mr. Corona-Gonzalez based on a fact not supported by the record, it would deprive Mr. Corona-Gonzalez of this right. Consequently, even under plain error review, we must afford him an opportunity to have the district court reassess his sentence.

## Conclusion

Accordingly, we reverse the defendant's sentence and remand the case to the district court in order to permit the district court to reassess the sentence free of the factual misapprehension that places in serious doubt the fairness of the original imposition of the sentence. On

remand, the district court's task will be complete once it reassesses the sentence free of this misapprehension. Other aspects of the original sentencing procedure are not subject to reopening or reconsideration.

REVERSED and REMANDED