In the

# United States Court of Appeals

## For the Seventh Circuit

No. 19-2377

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

MICHAEL PROPST,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Eastern District of Wisconsin.
No. 1:19-cr-00020 — **William C. Griesbach**, *Judge.*

ARGUED APRIL 8, 2020 — DECIDED MAY 12, 2020

Before RIPPLE, BRENNAN, and SCUDDER, *Circuit Judges.*

BRENNAN, *Circuit Judge.* A criminal defendant pleaded guilty to making threatening and harassing interstate telephone calls. He challenges his sentence, arguing the district court relied on an incorrect count of his previous similar convictions as well as insufficiently explained an upward variance in his sentence from the applicable Sentencing Guidelines range.

We affirm the defendant's sentence because he has not shown the district court relied on the misinformation resulting in plain error, and the court properly justified the sentence under the statutory sentencing criteria.

## I. Factual and Procedural Background

Michael Propst, originally from Florida but later a resident of Wisconsin, has a lengthy history of making harassing, obscene, and threatening telephone calls.

Propst placed these graphic calls, often while under the influence of methamphetamine. He told the receiver of the call he was with a lost or scared child, although he was not. Propst claimed he was sodomizing the child or had recently done so, and he threatened to continue to sexually assault the child. Sometimes he simulated a child screaming. Propst admitted the calls sexually aroused him, and he would masturbate while making the calls.

Propst has many criminal convictions over the years for engaging in these acts. In Florida, beginning in 1999, he was convicted numerous times for harassing phone calls. Then in 2002, he was convicted in federal court of several counts of similar conduct. He was sentenced to prison followed by supervised release, which he successfully completed.

Over the last few years, Propst's telephone calls again came to the attention of law enforcement in different parts of the country. A multiple-jurisdiction investigation revealed that Propst had made numerous obscene and harassing phone calls to residences and businesses in different states. Some of the calls were placed from the Eastern District of Wisconsin, and some from other states, as Propst worked as an over-the-road truck driver.

On June 12, 2018, Propst went on a calling spree. Among his many calls that day, he telephoned a mother in Green Bay, Wisconsin claiming he was raping her daughter. He also called daycare centers in Indiana and Iowa and stated he had found lost children and was sexually assaulting them. Propst was arrested, indicted, and later entered into an agreement with the government under which he pleaded guilty to two counts of making interstate telephone calls in which he threatened personal injury in violation of 18 U.S.C. § 875(c) and to one count of threatening or harassing interstate communications contrary to 47 U.S.C. § 223(a)(1)(C). Three counts of the indictment were dismissed, and the government agreed not to pursue additional charges in the Eastern District of Wisconsin and in the District of Delaware, which also had been investigating Propst.

Each party filed a sentencing memorandum. The government's memorandum counted "41 state and federal criminal charges of which Mr. Propst has been convicted since February of 1999." The majority of those convictions were "based on telephone calls made to daycares, school, and other businesses during which Mr. Propst claimed the abduction and rape of a young child for the purposes of gratifying his sexual urges." The defense memorandum did not state the exact number of convictions, in total or for harassing or obscene calls, but mentioned "previous convictions for similar offenses, … that this is not Propst's first conviction."

A presentence investigation report was prepared and the Sentencing Guidelines calculations yielded an imprisonment range of 24 to 30 months. Under the terms of the plea agreement, the parties were "free to argue for any sentence between 60 and 120 months of incarceration." During the sentencing

hearing the government asked for the top of that span and the defense the bottom.

At the sentencing hearing—after Propst's allocution and before the district court gave its sentencing rationale—the district court, prosecutor, defense attorney, and probation officer discussed Propst's phone calls. The district court asked the prosecutor how many of Propst's calls were relevant conduct to be considered,[1] as opposed to part of Propst's prior criminal record. The court said: "I think you mentioned 41 calls in your memorandum." The prosecutor responded: "41 convictions for calls." The court replied: "41 convictions for calls over the period of his record. But in this particular case, this would be, [speaking to the probation officer], paragraphs really 21 through … " referencing the presentence investigation report. Propst's attorney then said: "One answer to your question, Your Honor, is in—I'm looking for it—the number 105 sticks in my head. …"

After the court, defense attorney, and probation officer located the appropriate paragraph in the presentence investigation report, the defense attorney noted that Propst made 105 phone calls on June 12 "so that's … what I'm going to call the date of offense." The defense attorney then said "[a]nd a more general answer to the Court's question is, I'll candidly say, I don't know" because the discovery in the case contained a great number of phone records, including many duplicates, in a list of phone calls. The defense attorney continued: "And

---

[1] In the plea agreement, the parties stipulated that under U.S. SENTENCING GUIDELINES MANUAL § 1B1.3, the sentencing judge could consider relevant conduct in calculating the Guidelines range, even if the relevant conduct is not the subject of the offenses to which the defendant plead guilty.

so you're not necessarily sure what those calls are. I wouldn't be prepared to agree and perhaps the government wouldn't be prepared to argue that all of them were … calls of this nature."

The court and the probation officer then discussed which portions of the presentence investigation report described the calls Propst placed on June 12 versus which detailed conduct from the Delaware investigation. Among the June 12 calls, the court distinguished those charged in the indictment from additional calls that same day, the content of which was unknown. When the court stated those additional calls were not part of discovery, the defense attorney pushed back: "There is some discovery, Your Honor, about some of the other calls that were made to other jurisdictions and that was part of my argument to the extent that some of the calls were sexual, some were harassing, some were a call, a hang-up, a callback, a hang-up." The court then finished its review of the remaining calls, which were relevant conduct but not charged from Delaware.

Then the district court gave its rationale for Propst's sentence. In the plea agreement, and during their sentencing presentations, the parties agreed that the Guidelines range of 24 to 30 months understated the seriousness of the offense and was inadequate. The court found that the Guidelines did not capture these calls to a mother and to childcare centers, which were more than just nuisances. The court reviewed the goals of the sentence, and the nature and circumstances of the offenses, which the court found very serious. Although Propst had already received prison and jail sentences for such crimes, he continued to make these calls, which were not isolated to one person but multiple calls to multiple recipients.

Propst's history and character were then reviewed. The district court stated that Propst's criminal history category could have been higher; even so, his Guidelines calculation would not have reached the 60 to 120 month range in the plea agreement. To the court, "the nature and number of these offenses provide strong evidence of a very poor character, a very dangerous character." The court surmised that drugs made it easier for Propst to place these calls. Propst's misconduct occurred over many years, so the court concluded drug treatment alone would not counter Propst's behavior.

Because of the history of these calls, the district court found Propst's allocution and remorse less credible. His history and character "indicate the need for a significant sentence." The court was satisfied a sentence "within the range argued by counsel" was appropriate and sentenced Propst to 84 months' imprisonment followed by three years of supervised release. The court also filed a written statement of reasons for the sentence.

Propst appeals arguing the district court improperly relied on inaccurate information in sentencing him. During the sentencing hearing the prosecutor said Propst had "41 convictions for calls" which the court immediately repeated. While Propst did have 41 previous criminal convictions, 31 of them were for harassing, obscene, or threatening phone calls according to the government on appeal. Propst also argues the district court inadequately explained its reasons for imposing an 84-month sentence, varying upward by 54 months over the 30-month top of the applicable Guidelines range. The government disagrees, arguing the length of Propst's sentence was driven by the nature of his offenses, not the precise number of his previous criminal convictions for harassing or obscene

calls, and that the district court adequately explained its selection for Propst of a sentence above the Guidelines range.

## II. Discussion

### A. Standard of Review

A district court commits a significant procedural error in sentencing when it "select[s] a sentence based on clearly erroneous facts." *Gall v. United States*, 552 U.S. 38, 51 (2007). "Usually, we review procedural errors under a non-deferential standard." *United States v. Corona-Gonzalez*, 628 F.3d 336, 340 (7th Cir. 2010). But a party must make a proper and timely objection that alerts court and the opposing party to the specific grounds for the objection. *See* FED. R. CIV. P. 51(b); *United States v. Thomas*, 845 F.3d 824, 831 (7th Cir. 2017). The purpose of the contemporaneous objection rule is to ensure the district court has an opportunity to consider and to resolve the contested issue immediately. *See Puckett v. United States*, 556 U.S. 129, 134 (2009); *United States v. Miller*, 900 F.3d 509, 513 (7th Cir. 2018). If the defendant did not object at the time of sentencing, we review for plain error. FED. R. CIV. P. 52(b); *Corona-Gonzalez*, 628 F.3d at 340; *United States v. Oliver*, 873 F.3d 601, 607 (7th Cir. 2017) (same).

The parties dispute which standard of review should apply to Propst's appeal of the accuracy of the information the district court relied upon at the sentencing hearing. Propst argues his attorney's efforts to provide the district court correct information on the number and nature of his phone calls preserved this issue for de novo review. The government believes the plain error standard of Federal Rule of Criminal Procedure 52(b) applies because Propst's attorney did not object to the statements of the prosecutor and the court about how

many of Propst's convictions were for harassing or obscene phone calls. We conclude the defense attorney's statements did not constitute a proper and specific objection to the number of Propst's previous criminal convictions for harassing, obscene, or threatening calls.

The defense attorney's statements during the challenged portion of the sentencing hearing were close in time to the incorrect statements by the government and the court that Propst had "41 convictions for calls." But defense counsel did not use the word "object," which is always favored for the sake of clarity. *See* FED. R. CIV. P. 51(b). Had the defense attorney's comments disaggregated those convictions Propst received for phone calls from his other prior convictions, then those statements may have constituted an objection. But that was not the subject matter of the defense attorney's statements, so the contemporaneous objection rule was not satisfied.

Propst's counsel's statements do not attempt to preserve the specific error Propst now claims. The defense attorney spoke generally on the number and content of Propst's calls. None of those comments were specific to the distinction to which Propst now objects: that contrary to the court and the government's statements, not all Propst's convictions were for harassing or threatening phone calls. Even the defense attorney's last two statements—in which he did not agree that all Propst's calls were harassing or obscene, and that not all calls were sexual or harassing—went to the court's inquiry as to which calls constituted charged conduct versus relevant conduct, not the number of convictions for criminal phone calls versus drug-related and other crimes.

The challenged portion of the sentencing hearing concerned a different issue. During the segment of the sentencing hearing at issue, the court, counsel, and probation department tried to clarify the correct number and nature of the phone calls on the date of the offense and in discovery. That is not the error complained of here. During the part of the sentencing hearing Propst disputes, the attention of court and counsel was on a section of the presentence investigation report about charged and relevant conduct.[2] A different section of that report related to Propst's criminal record, and that section was not mentioned.[3]

For these reasons, we are not persuaded that the defense preserved this objection. *Cf. United States v. Miller*, 900 F.3d 509, 513 (7th Cir. 2018) (concluding defendant's oral disagreement with court's count of prior felony convictions preserved issue for de novo appellate review). So our review on this issue is for plain error. To succeed under that standard of review a defendant must show "(1) an error or defect, (2) the error is clear or obvious and not subject to reasonable dispute, (3) the error affected substantial rights, and (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings. If the defendant meets this high bar, this Court, in its discretion, may remedy the error." *United States v. Freed*, 921 F.3d 716, 720 (7th Cir. 2019) (citations omitted).

The defendant's second challenge to his sentence—to the district court's explanation of the upward variance from the

---

[2] Presentence Investigation Report, Dist. Ct. Dkt. No. 10 at pp. 5–8, ¶¶ 20–34.

[3] *Id*. at pp. 12–22, ¶¶ 65–86.

Sentencing Guidelines range—we review de novo. *United States v. Kuczora*, 910 F.3d 904, 907 (7th Cir. 2018).

### B. Accuracy of Information at Sentencing

A sentence may not be "predicated on misinformation or misreading of court records, a requirement of fair play." *Townsend v. United States*, 334 U.S. 736, 741 (1948). A convicted defendant has a due process right to be sentenced based on accurate information. *Id.*; *United States v. Tucker*, 404 U.S. 443, 447 (1972); *United States ex rel. Welch v. Lane*, 738 F.2d 863, 864 (7th Cir. 1984). For false information to form part of the basis for a sentence, the defendant must show "first, that information before the sentencing court was inaccurate, and second, that the sentencing court relied on the misinformation in passing sentence." *Lane*, 738 F.2d at 865. "A court demonstrates 'actual reliance on misinformation' when sentencing if 'the court gives explicit attention to it, founds its sentence at least in part on it, or gives specific consideration to the misinformation before imposing sentence.'" *United States v. Chatman*, 805 F.3d 840, 844 (7th Cir. 2015) (quoting *Promotor v. Pollard*, 628 F.3d 878, 888 (7th Cir. 2010)).

We examine under the plain error standard of review whether at sentencing the district court relied on inaccurate information. The first factor in that review requires the defendant to show an error or defect. There is no question that the government and the court incorrectly stated that Propst had "41 convictions for calls" when not all of Propst's criminal convictions involved harassing, threatening, or obscene phone calls. In deciding whether there was an error this court also considers the question of actual reliance. *Oliver*, 873 F.3d at 608-09; *Chatman*, 805 F.3d at 844-45. The parties dispute

whether the district court relied on that misinformation such that the error was "plain."

Propst argues "the judge explicitly, specifically considered an incorrect number of calls before imposing sentence, [which] establishes the judge used inaccurate information to impose sentence." The government disagrees, arguing that after the initial incorrect statement the court never repeated the number of convictions for telephone calls. Multiple times during the court's sentencing rationale it referenced the defendant making such calls. But the government submits the number of such calls did not matter to the court's sentencing decision.

We conclude that the district court did not rely on the misinformation. It never mentioned the number of Propst's convictions, for telephone calls or otherwise, in its sentencing rationale. So there was no "explicit attention" to the number of convictions, *Chatman*, 805 F.3d at 844, in contrast with *Miller*, 900 F.3d at 513–14 (referring four times to inaccurate information on defendant's prior record), *Corona-Gonzalez*, 628 F.3d at 341 (referring three times to misinformation when stating reasons for imposing chosen sentence), and *Lane*, 738 F.2d at 866 (concluding "the sentencing court's reliance on the misinformation is explicit and incontrovertible" as the court stated the incorrect prior conviction was a "significant factor" in its decision).

We are not persuaded that the incorrect number of prior convictions for this behavior in any way influenced Propst's sentence. Said another way, the district court did not give "specific consideration," *Chatman*, 805 F.3d at 844, to the incorrect number of prior convictions for harassing or threatening calls. Although the district court based Propst's sentence

in part on his criminal history, Propst has not pointed to where or how the misinformation influenced or affected his sentence. The record provides no basis to reasonably infer the court relied on the incorrectly stated number of convictions for phone calls. And the colloquy that included the misinformation preceded the district court's sentencing rationale. That separation counsels against a conclusion that the court "specifically considered" the misinformation.

When the court gave its reasons for choosing the defendant's 84-month sentence, it referred a number of times to the defendant's "history" of having made harassing, obscene, or threatening calls.[4] That Propst had been convicted of many such calls was undisputed. Everyone knew he had engaged repeatedly in these criminal acts. The misinformation was that many, but not all, of Propst's convictions were for threatening or harassing phone calls. That discrepancy was never mentioned in the district court's reasoning for the sentence Propst received.

"Context plays a crucial role in evaluating the degree of influence that an unsupported fact has had on a district court's sentencing decision." *Corona-Gonzalez*, 628 F.3d at 342. The district court in its sentencing rationale principally considered the nature of Propst's crimes. The calls were more than annoying; they were threatening and obscene and deeply impacted the victims. As the government points out, the district court's written statement of reasons accompanying the judgment cited "the nature and circumstances of the

---

[4] Sentencing Hearing Tr., Dist. Ct. Dkt. No. 28 at p. 40 ("having done this"), p. 41 (multiple times having done this same thing); p. 42 ("these things"), p. 45 ("to have this many" calls).

offense" rather than "Issues with Criminal History" as the ground for the defendant's sentence being above the advisory Guideline range.

Propst also argues the district court erroneously concluded that the defendant's criminal history underrepresented the extent of his criminal conduct. Even if the court was incorrect on this point, that singular comment about Propst's criminal history category had no effect on the sentence, as even a higher criminal history category would not have resulted in the Sentencing Guideline range of 60 to 120 months which the parties negotiated and then argued to the court. And again, the court's written statement of reasons did not cite Propst's criminal history as the basis for his sentence.

The district court did not erroneously rely on the misinformation, so there was no error or defect. Given the lack of reliance on the misinformation, the error was not clear or obvious, as the parties disputed it. Because the first and second plain error factors have not been satisfied, we need not reach the third and fourth factors. *See, e.g., United States v. Pankow*, 884 F.3d 785, 790–94 (7th Cir. 2018) (analyzing first two factors of plain error but not third and fourth). The accuracy of the information considered for Propst's sentence is not a ground warranting reversal.

### C. Explanation of Upward Variance

Next, Propst contends the district court inadequately explained the upward variance in his sentence to 84 months, which exceeded the 30-month maximum under the Guidelines range as well as the 60-month minimum in the parties' plea agreement. The factors the district court relied on in its sentencing rationale were already captured in the Sentencing

Guidelines, Propst asserts. To justify an upward departure, those factors should be sufficiently particular to him, Propst argues, but the reasons the court cited apply to all harassing or threatening callers.

The government responds that in the plea agreement and at sentencing Propst admitted the Guidelines range was inadequate, conceding that the Guidelines did not adequately capture Propst's very serious offense conduct. The parties had agreed an upward variance would happen; at issue was only how far: 24 months above the range per the defendant or 90 months above the range per the government.

"There is no need to identify extraordinary circumstances to justify a sentence outside the Guidelines range." *Kuczora*, 910 F.3d at 907 (quoting *Gall v. United States*, 552 U.S. at 47) (internal quotation marks omitted). The court at sentencing must explain why the result is appropriate under the factors of 18 U.S.C. § 3553(a). *Id.* at 908; *United States v. Kirkpatrick*, 589 F.3d 414, 416 (7th Cir. 2009). "[T]he sentencing court need not frame its explanation of a sentence in terms of a departure from the guidelines range." *United States v. Courtland*, 642 F.3d 545, 550 (7th Cir. 2011).

The district court properly explained why an 84-month sentence was warranted for Propst under the statutory sentencing criteria. The court evaluated the defendant's conduct, recognizing the aggravated nature and circumstances of Propst's crimes and their impact on the victims. The repeated nature of his harassing, obscene, and threatening calls was noted, as was the duration (nearly twenty years) over which he had engaged in this behavior. Propst's actions were "very serious," the court concluded, justifying punishment.

Propst's character was assessed, such as his criminal history and his substance abuse, including the role his use of drugs played in these crimes. The court also weighed the level of remorse in Propst's allocution, not finding it credible. The court further pointed out the repeated nature of the calls, how incarceration had not discouraged Propst from engaging in these repeated crimes, and it reasoned that his sentence should serve the proper sentencing goal of deterrence.

The district court employed the parties bargained-for range of 60 to 120 months and chose a sentence length below its midpoint. That acknowledged the parties' negotiations, including the dismissal of some criminal counts and not charging other conduct from around the country. For these reasons—all specific to Propst—the court properly concluded that a "significant" sentence was necessary.

Propst argues the reasons the district court offered for his sentence are included within the Sentencing Guidelines themselves, and thus are inadequate for such a large variance of 54 months over the 30-month top of his Guideline range. But Sentencing Guideline § 2A6.1, which applies to these crimes, encompasses all degrees of threatening or harassing communications. U.S. SENTENCING GUIDELINES MANUAL § 2A6.1 (U.S. SENTENCING COMM'N 2018). Among the reasons the court gave for Propst's sentence were that his crimes were particularly "extreme" (noted in the written statement of reasons for the sentence), and that Propst repeatedly committed the same crime after incarceration for the same conduct. These justifications are sufficiently compelling to support Propst's sentence. *See Gall*, 552 U.S. at 50 (requiring sufficiently compelling justification); *United States v. Wachowiak*, 496 F.3d 744,

749–50 (7th Cir. 2007) (requiring court to explain and support sentence).

The district court fully explained why Propst's sentence was justified under the statutory sentencing factors, and the sentence given was well within the court's discretion.

### III. Conclusion

For these reasons, we AFFIRM the sentence of the district court.