**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with FED. R. APP. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued October 4, 2022
Decided November 10, 2022

***Before***

MICHAEL Y. SCUDDER, *Circuit Judge*

AMY J. ST. EVE, *Circuit Judge*

CANDACE JACKSON-AKIWUMI, *Circuit Judge*

Nos. 21-2875 & 21-2892

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>    *Plaintiff-Appellee*,<br><br>*v.*<br><br>ANTOINE WHITE,<br>    *Defendant-Appellant.* | Appeals from the United States District Court for the Northern District of Illinois, Eastern Division.<br><br>Nos. 1:20-CR-00673-1 & 1:21-CR-00281-1<br><br>Ronald A. Guzmán,<br>*Judge.* |

## O R D E R

Antoine White pleaded guilty to unlawful transportation of stolen goods, 18 U.S.C. § 2314, and felony possession of a firearm, 18 U.S.C. § 922(g)(1), and was sentenced, above his calculated guidelines range, to 84 months' prison time. He appeals his sentence by arguing that the court relied on inaccurate information about his prior employment and criminal history and failed to address a mitigating argument. Because the district court did not commit procedural error, we affirm the sentence.

In 2020, White and an accomplice broke into a northwest Indiana store, took six dirt bikes, loaded them into a rental truck, and set off for Chicago. They fled law enforcement in an ensuing chase on the interstate, during which they collided with another truck and attempted to ram a police car. After crashing the rental truck into a concrete barrier, White and his accomplice took off on foot. Illinois police found White and arrested him shortly thereafter.

With state charges pending for the bike theft, White was indicted for unlawfully transporting stolen goods in interstate commerce in violation of 18 U.S.C. § 2314. *United States v. White*, No. 1:20-CR-00085 (N.D. Ind. Jul. 16, 2020). White was already on federal supervised release for three prior convictions stemming from a string of gun thefts. Because he violated his supervised-release terms, a bench warrant was issued for his arrest. *United States v. White*, 1:20-CR-00673(1) (N.D. Ill. Sep. 24, 2020). United States Marshals executed the arrest warrant and found White in possession of a firearm with an altered serial number, in violation of 18 U.S.C. § 922(g)(1). *Id.*

The parties agreed to consolidate and transfer the cases to the Northern District of Illinois for plea and sentencing. FED. R. CRIM. P. 20(a). White pleaded guilty to the transportation of stolen goods and unlawful possession of a firearm charges. The presentence investigation report set White's offense level at 16 and criminal history category at IV, resulting in a guidelines range of 33 to 41 months. Neither party disputed the sentencing range or underlying calculations, and the district court adopted the report. The prosecution, noting the seriousness of the bike theft and White's criminal history, recommended a prison sentence of 41 months. White argued for 25 months. He stated that his father was murdered when White was 10 years old, and White also highlighted the deaths of his girlfriend, cousin, and four friends shortly after his release from prison, which disrupted his transition to life outside prison. He also explained that he carried a firearm for self-protection because he feared retaliation for a murder his younger brother committed.

The court sentenced White to an above-guidelines 84 months' prison term. When remarking upon White's criminal history, the court recounted that he previously had "robbed" multiple gun stores, those thefts had been preplanned, and fewer than half of the 455 stolen firearms had been recovered. The court stressed the violent and premeditated nature of the offense, White's dangerous flight from law enforcement, and his "uninterrupted pattern" of criminal offenses. The court also underscored White's sparse employment history, singling out a month or two at a temporary employment agency, six months at a McDonald's, a month at Skate King (a roller-

skating rink), and five months at Footaction (a shoe store). In the court's view, this history reflected White's "failure to be gainfully employed [and] live up to his responsibilities" and the ineffectiveness of earlier sentences to deter him from further crime. The court ultimately concluded that the guidelines range did not sufficiently reflect the need for specific deterrence, respect for law, and the defendant's uninterrupted pattern of criminal conduct.

On appeal, White argues that the district court relied on inaccurate information at sentencing when it misstated his employment history. He argues, and the government concedes, that the court misstated the length of his employment at Skate King by saying that White worked there for one month (the undisputed presentence report confirms he worked at Skate King for eight or nine months). This work experience, White insists, undermines the court's conclusions that he had "virtually no employment history in the last ten years" and that he "worked for months at a time in jobs that don't mean much."

The parties dispute the applicable standard of review on this matter. White maintains that selecting a sentence based on clearly erroneous facts is a significant procedural error entitled to de novo review. *See United States v. Jackson*, 547 F.3d 786, 792 (7th Cir. 2008). The government argues that plain error applies because White did not raise these objections at the sentencing hearing.

We recently clarified an apparent uncertainty in our circuit's caselaw regarding which standard applies in such situations. In *United States v. Wood*, 31 F.4th 593, 598 (7th Cir. 2022), we explained that there may be circumstances where a district court's ruling at a sentencing hearing creates new grounds for appeal, and FED. R. CRIM. P. 51(a) dictates that a litigant need not object to preserve his appellate options. "Litigants cannot be required to interrupt a judge mid-explanation (and risk inviting the ire of the court …)." *Wood*, 31 F.4th at 598. To preserve his argument on appeal, White was not obligated to object to the court's ruling, so we review de novo.

But even under de novo review, White faces a steep burden. "A convicted defendant has a due process right to be sentenced based on accurate information." *United States v. Propst*, 959 F.3d 298, 304 (7th Cir. 2020). But in order to have his sentence set aside because of this inaccurate information, he must show that the inaccurate information "mattered in the sentencing decision." *United States v. Pennington*, 908 F.3d 234, 240 (7th Cir. 2018). Moreover, the inaccuracy must have affected the defendant's substantial rights. *Propst*, 959 F.3d at 304. "A court demonstrates 'actual

reliance on misinformation' when sentencing if 'the court gives explicit attention to [the misinformation], founds its sentence at least in part on it, or gives specific consideration to the misinformation before imposing sentence.'" *Id*. (quoting *United States v. Chatman*, 805 F.3d 840, 844 (7th Cir. 2015)).

White has not shown that the district court's factual error was a driving factor in the sentence. The court placed a great deal of emphasis on White's repeated violent criminal conduct and the lack of deterrence his lengthy prior terms of incarceration had on him. The court said it was troubled by an "uninterrupted pattern" of criminality and that the guidelines calculation inadequately reflected the seriousness of the two offenses. The court reasoned that White's prior prison sentences had "no discernable effect" on deterrence. The court also emphasized the scale and premeditated nature of White's offenses as well as the dangerous circumstances surrounding his flight from law enforcement where he attempted to ram into a law enforcement vehicle and crashed into another vehicle.

In addition, the court's sentence reflected White's lack of respect for the law. The court noted that he was on supervised release when he committed this offense and he had violated numerous prison rules while previously incarcerated.

The transcript also does not suggest that the court based its sentence on misconceptions about the number of months White worked at Skate King. Although the court discussed White's employment history at the sentencing hearing, it misstated White's work history only once and placed greater emphasis on his extensive criminal history and the need for deterrence. It is clear from these statements that the court's focus was on the temporary nature of his jobs over a ten-year period, including a six-month stint at McDonald's, rather than a specific length of any job. Similarly, in its written statement of reasons, the court included the same misstatement about employment history but stressed the broader need for the sentence "to reflect the seriousness of the offense, afford adequate deterrent to criminal conduct, protect the public from further crimes by this defendant and provide defendant with needed educational or vocational training." Because the finding about work history did not affect the court's ultimate sentencing decision, it did not rely on the inaccuracy. *Cf. United States v. Miller*, 900 F.3d 509, 514 (7th Cir. 2020) (finding plain error and remanding where district court repeatedly misstated and emphasized the number of defendant's prior felony convictions, both orally and in written explanation).

White next argues that the court's pronouncement that "multiple stores were robbed" was inaccurate because he was charged with burglary, not robbery. But this isolated reference to robbery does not suggest an inaccuracy that affected sentencing. The court used the term "robbed" only once at sentencing, and the court—in its statement of reasons—properly recharacterized the prior offense as a burglary. When a sentencing judge corrects an oral statement in the written statement of reasons, remand is unnecessary. *United States v. Reed*, 859 F.3d 468, 474 (7th Cir. 2017).

White also contends that the district court relied on another piece of inaccurate information—the statement in his 2012 presentence report (in connection with his prior gun-theft offense) that fewer than half of the 455 firearms stolen by White and his accomplices had ever been recovered. To White, this statement was speculative, because one could infer that additional firearms have been recovered in the decade since the earlier report was issued. But White has produced no evidence that additional firearms have been recovered since 2012, a point on which he bears the burden of proof. *See United States v. Rogers*, 44 F.4th 728, 740 (7th Cir. 2022). Moreover, the district court's primary reason to discuss the 2012 theft was to highlight its nature as a "preplanned, executed theft of a grand amount of lethal firearms," not the specific number of firearms that had not been recovered. Thus, even if the district court's finding was inaccurate, it would not be reversible error because the court did not rely on this finding to determine the sentence.

Finally, White asserts that the district court failed to address his argument in mitigation that he carried a firearm to protect himself because he feared retaliation for a murder his brother committed. But the sentencing transcript shows that the court meaningfully considered this argument. *See United States v. Sanchez*, 989 F.3d 523, 540 (7th Cir. 2021). The court indicated that it understood and considered the effects of gun violence on White, noting his "tragic losses to violence." It also stated that it was "perplexed why [White] would steal and sell and possess illegal guns when they have done so much harm to him and his family." Moreover, this argument is implicated in the nature and circumstances of White's offense, which the court considered, and the court could, in its discretion, conclude that White required a longer sentence because the prior convictions had not deterred him from unlawfully possessing a gun. We conclude, therefore, that the district court meaningfully, if implicitly, considered this argument. *See id.*

AFFIRMED.