In the

# United States Court of Appeals
## For the Seventh Circuit

---

No. 24-2999

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

MAURICE WHITESIDES,

*Defendant-Appellant.*

---

Appeal from the United States District Court for the
Southern District of Indiana, Terre Haute Division.
No. 2:24-cr-00011-JRS-CMM-1 — **James R. Sweeney II**, *Chief Judge.*

---

ARGUED NOVEMBER 4, 2025 — DECIDED JUNE 3, 2026

---

Before EASTERBROOK, KIRSCH, and KOLAR, *Circuit Judges.*

KIRSCH, *Circuit Judge.* Maurice Whitesides pleaded guilty to drug and firearm offenses. At sentencing, the district court applied a two-level drug-premises enhancement pursuant to United States Sentencing Guidelines § 2D1.1(b)(12). Whitesides argues on appeal that the enhancement does not apply because his residence was not continuously used for distributing methamphetamine and that the district court made

erroneous factual findings. The enhancement was properly applied, and any factual errors were harmless, so we affirm.

I

After receiving a tip that Maurice Whitesides was distributing drugs in Terre Haute, Indiana, police officers initiated a traffic stop on the car he was driving. The officers searched the car and seized $14,226 from the center console. After receiving warnings pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966), Whitesides admitted that he was traveling to Indianapolis to purchase a large quantity of methamphetamine.

Later that day, officers searched a residence rented by Whitesides on Spruce Street in Terre Haute. In a kitchen cabinet, the officers found approximately 423 grams of pure methamphetamine, two digital scales, and an empty box of sandwich baggies. A loaded handgun and ammunition were found in a bedroom. Officers conducted a separate search of the home of Whitesides's girlfriend, located on South Seventh Street in Terre Haute, and found roughly 316 grams of pure methamphetamine, two additional scales, and two other firearms. Officers also obtained messages from Whitesides's cellphone which showed that he provided both the Spruce Street and South Seventh Street addresses to suspected drug customers. While the specific number of drug transactions that occurred at the Spruce Street home is unclear, officers confirmed one sale.

A grand jury indicted Whitesides with one count of possession with intent to distribute a mixture of methamphetamine, in violation of 21 U.S.C. § 841(a)(1), and one count of unlawful possession of a firearm by a convicted felon, in

violation of 18 U.S.C. § 992(g)(1). Whitesides pleaded guilty to both counts.

In the Presentence Investigation Report, the probation officer recommended a two-level enhancement for maintaining a premises for distributing a controlled substance. U.S.S.G. § 2D1.1(b)(12). At the sentencing hearing, the district court heard testimony from an officer who led the investigation into Whitesides's activities. The officer testified regarding the circumstances surrounding Whitesides's arrest, the subsequent investigation of the Spruce Street and South Seventh Street homes, and the messages obtained from Whitesides's cellphone. The officer also testified that the investigation revealed no evidence that Whitesides was gainfully employed.

Whitesides objected to the application of the drug-premises enhancement, arguing that the government failed to demonstrate that he continuously used the Spruce Street home for the purpose of distributing methamphetamine. The district court overruled Whitesides's objection, finding that the two-level increase was appropriate. The court observed that, in addition to the loaded firearm and methamphetamine found at the Spruce Street home, "[t]wo digital scales with crystal residue on them were found at the residence under methamphetamine that was found there. And empty boxes of plastic baggies used for drug distribution were next to the scales." The court also noted that Whitesides "gave his residence address to drug customers." But the investigating officer did not testify that there was crystal residue on the scales found at the house, nor that there were multiple empty boxes of plastic baggies next to the scales (there was one). And the officer testified that Whitesides was directing suspected (but not confirmed) drug customers to the house.

After applying the drug-premises enhancement and a separate enhancement for possessing a firearm under U.S.S.G. § 2D1.1(b)(1), the district court concluded that Whitesides's total offense level was 33 and that his Criminal History Category was II, resulting in a Guidelines range of 151 to 188 months in prison. The district court sentenced Whitesides to 188 months and noted: "even if I had sustained Mr. Whitesides' objections … this would be the appropriate sentence under the sentencing factors based on the defendant's history and characteristics and circumstances of the offense."

## II

Whitesides makes two arguments on appeal. First, he contends that the record does not support the district court's application of the drug-premises enhancement. Second, he argues that the district court made three factual errors that affected his sentence. We review the district court's application of the U.S.S.G. § 2D1.1(b)(12) premises enhancement de novo and review the district court's underlying factual findings for clear error. *United States v. Craft*, 99 F.4th 407, 411 (7th Cir. 2024).

## A

The Sentencing Guidelines provide for a two-level enhancement where "the defendant maintained a premises for the purpose of manufacturing or distributing a controlled substance." U.S.S.G. § 2D1.1(b)(12). The government does not argue that Whitesides manufactured methamphetamine, so the only question is whether distributing methamphetamine was a "primary or principal use[]" of the Spruce Street home. U.S.S.G. § 2D1.1 cmt. n.17. In making this determination, the Sentencing Guidelines provide that courts should consider

"how frequently the premises was used by the defendant for … distributing a controlled substance and how frequently the premises was used by the defendant for lawful purposes." *Id.* But a sentencing court is not required to engage in a "simple balancing test" comparing lawful and unlawful uses but rather is to consider "both the frequency and significance of the illicit activities, including factors such as quantities dealt, customer interactions, keeping 'tools of the trade' and business records, and accepting payment." *Craft*, 99 F.4th at 411 (citation modified).

The record supports the district court's conclusion that drug distribution was a primary use for the Spruce Street home. Police found 422.6 grams of pure methamphetamine and tools of the trade—a loaded firearm, ammunition, and two digital scales—at the Spruce Street home. Officers also discovered text messages where Whitesides provided the Spruce Street address to suspected drug customers. In addition, there was no evidence that Whitesides was gainfully employed. While we have noted that making a livelihood from selling drugs alone is "not sufficient, by itself, to support the application of the premises enhancement," such a finding can "move the needle" towards applying the enhancement "by placing a defendant's home-centered drug trafficking activity in context." *Id.* at 412–13. Here, considering the other evidence presented, including the methamphetamine and drug paraphernalia found at the Spruce Street home, Whitesides's unemployment supports the district court's conclusion that he must have sold drugs out of that location. See *United States v. Winfield*, 846 F.3d 241, 243 (7th Cir. 2017) (fact that the defendant was "primarily living off proceeds from drug sales" supported the conclusion that the defendant "must have stored

or sold additional quantities of drugs at his apartment than the relatively modest amounts recovered by police").

Whitesides contends that one confirmed drug transaction is insufficient to warrant the application of the enhancement. But nothing in the text of § 2D1.1(b)(12) requires a minimum number of transactions to trigger the drug-premises enhancement. Regardless, the district court considered officer testimony indicating that Whitesides provided the address of the Spruce Street home to suspected drug customers (suggesting that it was more than one customer). And there was evidence that Whitesides was on his way to purchase more drugs at the time of his arrest.

Whitesides's reliance on two recent cases from this circuit is also unavailing. In *United States v. Craft*, we vacated a district court's application of the drug-premises enhancement where the defendant primarily distributed drugs from a gas station rather than his house and where there was no evidence that the defendant received or stored drugs at his home. 99 F.4th at 411–12. Here, by contrast, Whitesides used his home to store tools of the trade, including a gun and digital scales. And in *United States v. Montgomery*, 114 F.4th 847 (7th Cir. 2024), we vacated a district court's application of the enhancement where it was unclear whether the defendant had actually "maintained" a storage unit for the purpose of § 2D1.1(b)(12), and where the defendant had only accessed the storage unit three times to carry out drug transactions. *Id.* at 850–51. In this case, it's undisputed that Whitesides maintained the Spruce Street home, there was credible evidence that he was unemployed, and he provided the address to suspected customers, supporting the conclusion that Whitesides was distributing drugs from the home.

Whitesides also argues that the district court failed to adequately consider his lawful uses of the Spruce Street home, such as looking after his children. However, we have made clear that the analysis should not be reduced to a "simple balancing test" that compares the frequency of lawful and unlawful uses of a home. *United States v. Zamudio*, 18 F.4th 557, 562 (7th Cir. 2021) (citation modified). Such an analysis would effectively "immunize every family home that is also used for drug distribution from being deemed an illegally maintained 'premises'" since "the amount of lawful activity in a home is all but certain to exceed the amount of illegal activity." *United States v. Contreras*, 874 F.3d 280, 284 (7th Cir. 2017). Therefore, the district court did not err when it applied the two-level drug-premises enhancement.

B

Whitesides argues that even if the district court did not err in applying the enhancement, it made mistakes in determining the underlying facts that require remand. Defendants have a due process right to be sentenced based on accurate information, *United States v. Tucker*, 404 U.S. 443, 447 (1972), and factual errors can require remand if the inaccurate information mattered in the sentencing determination. *United States v. Williams*, 106 F.4th 639, 656 (7th Cir. 2024). "For false information to form part of the basis for a sentence, the defendant must show first, that information before the sentencing court was inaccurate, and second, that the sentencing court relied on the misinformation in passing sentence." *United States v. Propst*, 959 F.3d 298, 304 (7th Cir. 2020) (citation modified). The context of the misstatement "plays a crucial role in evaluating the degree of influence that an unsupported fact has had on a district court's sentencing decision."

*United States v. Corona-Gonzalez*, 628 F.3d 336, 342 (7th Cir. 2010).

We acknowledge that the district court misspoke while discussing some of the circumstances supporting the application of the enhancement: the digital scales found at the Spruce Street home did not have drug residue on them, there was only one box of empty baggies found at the home, and Whitesides did not give his address to known (but only suspected) drug customers. But there are no indications that those inaccuracies "mattered in the sentencing decision." *United States v. Pennington*, 908 F.3d 234, 240 (7th Cir. 2018). The district court's "focus, and its point of reliance" was on the broader points that the tools of the trade were found at Whitesides's home, that Whitesides conducted at least one sale at the home, that he had communicated the location to others, and that he was unemployed. *Williams*, 106 F.4th at 657 (district court's misstatement about a defendant's criminal history while explaining sentence did not require remand where district court "was less concerned with getting the number [of convictions] precisely right than it was with highlighting the sheer volume of [the defendant's] criminal conduct and the troubling trend it represented"). The record supports the district court's conclusion that the drug-premises enhancement applies. Even if we remand to the district court, such a decision would be "pointless" since we are certain that the district court would impose the same sentence. *United States v. Abbas*, 560 F.3d 660, 666 (7th Cir. 2009).

AFFIRMED